**Wiley BOYD, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 76–0944(A).**

United States District Court, W. D. Virginia, Abingdon Division.

Sept. 21, 1978.

Robert A. Vinyard, Abingdon, Va., for plaintiff.

Morgan E. Scott, Jr., Asst. U. S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION AND JUDGMENT

TURK, Chief Judge.

Plaintiff has filed this action challenging certain provisions of his awards of "black lung" benefits and disability insurance benefits under the Federal Coal Mine Health and Safety Act and the Social Security Act, respectively. Jurisdiction of this court is pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), which is incorporated by the Federal Coal Mine Health and Safety Act under 30 U.S.C. § 923(b). While plaintiff has been awarded benefits under both federal programs, plaintiff complains of a reduction in the amount of benefits received based upon his simultaneous receipt of Workmen's Compensation Benefits under the laws of the State of Virginia. Plaintiff contends that such double offset of benefits was contrary to the intent of Congress and that the offsets constitute a denial of constitutionally protected rights to due process. The Secretary argues that the offsets were statutorily mandated and that the result of the double offset is neither unreasonable nor inconsistent with the intent of Congress.

The facts of the case are not in dispute. The plaintiff, Wiley Boyd, terminated his employment with Clinchfield Coal Company on December 19, 1970 as a result of a work-related injury. On the basis of that injury, he received an award of state workmen's compensation beginning in January of 1971. His monthly benefits were $268.60. On March 18, 1974, Mr. Boyd was awarded final settlement for the injury in the amount of $8,188.00 and an additional $900.00 in settlement of an occupational pneumoconiosis claim. Thereafter, he ceased to receive regular monthly benefits.

In a Certificate of Award relative to his claim for disability insurance benefits, plaintiff was found to be entitled to benefits as of July, 1971. The certificate reflected that plaintiff would receive future benefits of $213.10 in his own right and that further benefits for Mrs. Boyd and the couple's children would be reduced due to Mr. Boyd's receipt of workmen's compensation benefits. On November 29, 1972, plaintiff was awarded federal "black lung" benefits with the date of entitlement established as February of 1971. Mr. Boyd was informed in the Certificate of Award that his future "black lung" benefits would be reduced by the amount of payments received under the workmen's compensation laws of Virginia.

Upon administrative appeal of the offset provisions of the federal awards, an Administrative Law Judge found that such deductions were consistent with the applicable statutory provisions. On October 4, 1976, the Social Security Administration's Appeals Council adopted the Law Judge's opinion as of the final decision of the Secretary.

There can be no doubt that the offsets in this case are consistent with the specific

statutory provisions governing payments of both disability insurance benefits and federal "black lung" benefits. See 42 U.S.C. § 424a (disability) and 30 U.S.C. § 922 ("black lung"). The only question presented by the instant appeal is whether a double offset should be implemented when a claimant is found to be entitled to simultaneous benefits under both federal programs. The circumstances of this particular case are obviously unusual and the issue itself has not been previously litigated in this district. In an unreported case involving the same question, the United States District Court for the Northern District of Alabama found that a double offset violated the intent of Congress. However, the district court's judgment was vacated on other grounds by the United States Court of Appeals for the Fifth Circuit, with the passing notation that the controversy presented "novel and intriguing issues of statutory construction and constitutional law." *Freeman v. Califano*, 574 F.2d 264 (5th Cir., June 2, 1978).

At first blush, the facts of this case seem to suggest that Mr. Boyd has been treated unfairly. Plaintiff understandably asserts that, from his perspective, it appears that he has actually been penalized financially as a result of his award of state workmen's compensation benefits. Indeed, while all the comparative figures are not a matter of record, it would seem that Mr. Boyd would have been in a better financial position had he never received state benefits. The situation is further compounded by the fact that the federal "black lung" benefits were offset by the full workmen's compensation award despite the fact that the state benefits were based primarily on an injury totally unrelated to pneumoconiosis ("black lung"). Nevertheless, the court is constrained to conclude that the Secretary properly offset the workmen's compensation benefits against both the social security disability and the "black lung" awards. In so holding, the court concurs with the Secretary's contention that the propriety of the double offset must be measured by what can only be viewed as the underlying purpose of both federal programs: the replacement of earnings lost as a result of inability to work due to a physical disability.

Little discussion need be devoted to the propriety of the offset of the workmen's compensation benefits against disability insurance benefits. As recognized by the United States Supreme Court in *Richardson v. Belcher*, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971), state workmen's compensation benefit programs and the federal disability program clearly share the common purpose of providing security to disabled workers and their families. The court in *Richardson v. Belcher* further determined that Congress acted pursuant to legitimate goals in seeking, through offset provisions, to prevent the duplication of benefits which could lead to a loss of incentives for work return and a consequential bankruptcy of the parallel benefit programs.

The offset of workmen's compensation benefits against the "black lung" benefits presents a somewhat different problem which is actually the crux of the controversy in the instant case. Regardless of how the proposition is approached, the Federal Coal Mine Health and Safety Act serves as an avenue to federal benefits which is not available to the vast majority of American workers. Moreover, since disability benefits and "black lung" benefits are not offset one against the other, a coal miner disabled from "black lung" could easily be entitled to greater benefits than could a worker whose disability is caused by factors other than pneumoconiosis. However, there is absolutely no indication that such a circumstance was intended by Congress so as to reward workers who mine the Nation's coal. Rather, the federal "black lung" program can only be viewed as a manifestation of the intent of Congress to rectify the historical lack of adequate state compensatory schemes for miners suffering from pneumoconiosis. See 30 U.S.C. § 901. Thus, state compensation plans and the federal "black lung" program both share the common design of replacement of income for workers

who become disabled.[1] Given such an understanding, it is neither unexpected nor unreasonable that Congress chose to offset state benefits from federal "black lung" awards so as to prevent duplication of benefits and insure the primacy of state systems. Such intent was specifically noted on pages 27–29 of H.R.Rep.No.92–460, 92nd Cong., 1st Sess. (August 5, 1971), wherein the purposes of the offset provisions of 30 U.S.C. § 922 were described as follows:

". . . [the prevention of] duplication of benefits to the extent that combined benefits equal or even exceed the worker's earnings before he became disabled. The rationale is to avoid creating a situation where it is more profitable to collect benefits than attempt to become rehabilitated and return to work."

Consequently, the court finds the rationale of *Richardson v. Belcher, supra,* to be equally applicable to the offset provisions of the Federal Coal Mine Health and Safety Act.

It follows that since all three programs are designed so as to provide replacement of income for disabled workers and since the two federal benefit programs are further designed so as to prevent duplication of replacement income, it is of no great significance that Mr. Boyd was the subject of a double offset. The combined effect of the three awards still assured plaintiff of the replacement income as intended under all three legislative programs.[2] There is no indication that Mr. Boyd's peculiar circumstances led to such a discriminatory or unreasonable result so as to contravene the intent of Congress. While Mr. Boyd may have received fewer dollars than he would have absent the state award, there is absolutely no basis for the assumption that Congress intended all federal "black lung" recipients to receive identical treatment. Indeed, there is no reason to believe that Congress did not foresee the double offset potential. Moreover, it is of no particular consequence that Congress chose to provide for offset of state workmen's compensation benefits against benefits awarded under Part B of the Federal Coal Mine Health and Safety Act, regardless of the basis of the state award. Had Congress chosen to simply reward coal miners who developed pneumoconiosis, a different result would prevail. However, the purpose of Congress was not to supersede state workmen's compensation programs but rather to insure that miners disabled due to pneumoconiosis do not suffer because of incomplete state programs. It is possible that Congress might have chosen a more precise formula for such unusual situations. However, this court need only determine that the double offset was properly effected under the applicable statutory provisions; that those statutory provisions are consistent with legitimate and cognizable goals; and that the application of the provisions to Mr. Boyd's particular situation was rationally related to the achievement of those goals.

The court is unable to discern any deprivation of rights suffered by plaintiff as a result of the offset of state workmen's compensation benefits against both his federal "black lung" benefits and his social security disability insurance benefits. Accordingly, the final decision of the Secretary must be and hereby is affirmed.

The clerk is directed to send certified copies of this opinion and judgment to the counsel of record.

---

1. The court has directed its evaluation of the Federal Coal Mine Health and Safety Act primarily to Part B of the program, beginning at 30 U.S.C. § 921, under which Mr. Boyd's benefits were awarded.

2. The Secretary's calculations suggest that plaintiff's highest average earning level prior to disability was $630.00 per month. Actual benefits received during the offset period were $541.50 per month. Without any offset, the figure would have been approximately $970.80 per month. Apparently, the offsets ceased when the amount received under workmen's compensation had been fully exhausted through deductions.