Willard H. HALL, Plaintiff,

v.

Patricia HARRIS, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 78–0226–B.

United States District Court,
W. D. Virginia.

April 1, 1980.

Robert A. Vinyard, Abingdon, Va., for plaintiff.

Paul R. Thomson, Jr., U.S. Atty., Morgan E. Scott, Asst. U.S. Atty., Roanoke, Va., Barbara Allen Babcock, Asst. Atty. Gen., Washington, D.C., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Plaintiff has filed this action challenging certain provisions of his awards of "black lung" benefits and disability insurance benefits under the Federal Coal Mine Health and Safety Act and the Social Security Act, respectively. Jurisdiction of this court attaches pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), which is incorporated by the Federal Coal Mine Health and Safety Act under 30 U.S.C. § 923(b). While plaintiff has been awarded benefits under both federal programs, plaintiff complains of a reduction in both sets of benefits due to his receipt of workmen's compensation benefits under the laws of the State of Virginia. Plaintiff contends that such double offset of benefits was contrary to the governing statutory scheme. The Secretary argues that the double offset was consistent with the requirements of the respective Acts.

### I. STATEMENT OF THE FACTS

The facts of the case are not disputed. Plaintiff Willard H. Hall terminated his employment with Clinchfield Coal Company on March 4, 1970, as a result of a work related back injury. On the basis of that injury, he received an award of state workmen's compensation benefits; beginning March 12, 1970, in the amount of $51.00 per week. On August 8, 1972, Mr. Hall settled his workmen's compensation claim for the amount of $5,000.00. In the meantime, Mr. Hall had filed a claim for a period of disability and disability insurance benefits under the Social Security Act. Mr. Hall was found to be entitled to such benefits with a disability onset date of March 4, 1970. However, the benefits actually received were reduced as a result of plaintiff's award of workmen's compensation benefits.

On March 27, 1973, Mr. Hall settled a second workmen's compensation claim on the basis of occupational pneumoconiosis for $2,000.00. On November 21, 1974, plaintiff was awarded benefits under the Federal Coal Mine Health and Safety Act beginning in March of 1970. However, Mr. Hall was notified that his actual "black lung" benefits were to be reduced by the amount of workmen's compensation benefits received pursuant to his claims for his back injury and his occupational pneumoconiosis. Finally, on June 17, 1975, Mr. Hall was notified that his social security disability insurance benefits were to be reduced by the amount received in settlement of his state workmen's compensation occupational disease claim.

In short, the plaintiff has been the subject of what was really a double, double offset. The state benefits received pursuant to his claim for workmen's compensation benefits on the basis of an industrial injury and those received pursuant to his claim for workmen's compensation benefits on the basis of occupational disease were *both* offset against his federal disability insurance benefits *and* his federal "black lung" benefits. Plaintiff is understandably upset as it appears that he is now worse off financially than he would have been had he never received state benefits. Nevertheless, it can only be concluded that the Secretary's final decision is totally consistent with the applicable statutory provisions.

### II. RESOLUTION OF THE ISSUES

Under 42 U.S.C. § 424a, the Secretary is required to reduce benefits paid pursuant to an award of disability insurance benefits, under 42 U.S.C. § 423, if the recipient has also been deemed entitled to benefits under

a state workmen's compensation claim.[1] The statutory provision is clearly intended to encompass all state workmen's compensation benefits, regardless of the reason for the award or the mode of payment. The constitutional propriety of such a disability insurance benefit offset is well established. See *Richardson v. Belcher*, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).

The federal "black lung" offset provisions are codified under 30 U.S.C. § 922(b), as amended. At the time of the offset of benefits in the instant case, 30 U.S.C. § 922(b), as amended, provided as follows:

> Notwithstanding subsection (a) of this section, benefit payments under this section to a miner or his widow, child, parent, brother, or sister, shall be reduced, on a monthly or other appropriate basis, by an amount equal to any payment received by such minor [sic] or his widow under the workmen's compensation, unemployment compensation, or disability insurance laws of his State on account of the disability of such miner, and the amount by which such payment would be reduced on account of excess earnings of such miner under section 403(b) through (l) of Title 42 if the amount paid were a benefit payable under section 402 of Title 42.

In *Boyd v. Califano*, 479 F.Supp. 846 (W.D. Va. 1978), *aff'd* Number 78–1889 (4th Cir. 1979) (unpub.), the court held that the "black lung" offset provisions of 30 U.S.C. § 922(b) are not violative of constitutional due process. Indeed, in *Boyd*, the court affirmed the Secretary's final decision effecting a double offset in factual circumstances similar to those at hand. However, the instant plaintiff has raised a question of statutory interpretation which was not considered in *Boyd*. Plaintiff's argument centers on the impact of the last sentence of 30

U.S.C. § 922(b). By virtue of Pub.L. 92–303 § 2(a), 30 U.S.C. § 922(b) was amended in 1972 to provide that "[t]his part shall be not considered a workmen's compensation law or plan for purposes of section 424a of [Title 42]." Plaintiff argues that benefits paid pursuant to the Federal Coal Mine Health and Safety Act are a constant factor, and that it matters not that some claimants may receive a portion of their benefits in the form of state workmen's compensation payments. Thus, plaintiff reasons that the benefits paid are covered by the Act, regardless of the source, and that the word "part" in the last sentence of 30 U.S.C. § 922(b), as amended, should therefore be read to encompass all the sources from which the total benefit figure is derived. Accordingly, plaintiff concludes that the benefits received as a result of the state occupational disease settlement should not have been deducted from his disability insurance benefits, due to operation of the last sentence of 30 U.S.C. § 922(b), as amended.[2]

■ While plaintiff's argument is certainly innovative, the court must conclude that it is without merit for several reasons. First, it must be observed that the offset against disability benefits occurred not through operation of 30 U.S.C. § 922(b) but rather, as noted *supra*, through independent operation of 42 U.S.C. § 424a. If Congress had chosen to eliminate the double offset potential of the parallel statutory provisions, it would have been a simple matter to amend 30 U.S.C. § 922(b) to so state. Indeed, as discussed in more detail *infra*, Congress did exactly this by virtue of the Black Lung Benefits Reform Act of 1977. Second, there can be no doubt that the word "part" in the last sentence of 30 U.S.C. § 922(b) refers to Part B of Title IV

1. The reduction is not made on a dollar for dollar basis, but rather according to a formula established under 42 U.S.C. § 424a. While the exact figures necessary to compute the amount of offset have not been made available to the court in the instant case, it appears that the Secretary employed the proper formula in his computations. Plaintiff does not contend that the actual computations are in error.

2. In the administrative adjudication of this case, an Administrative Law Judge held partially in plaintiff's favor on the basis of reasoning similar to that now offered by plaintiff on appeal. The Judge's decision was reversed by the Social Security Administration's Appeals Council in an opinion which now stands as the final decision of the Secretary.

of the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 921 *et seq.*[3] Thus, the word "part" clearly refers to the "black lung" benefits program for claims filed prior to December 31, 1973. *See* H. R. Rep. No. 92–460, Committee on Education and Labor, 92d Cong., 1st Sess. at 4.[4] Finally, the court notes that plaintiff's interpretation of 30 U.S.C. § 922(b) is plainly inconsistent with what has long been recognized to be the purpose of such offset provisions. Contrary to the opinion of the Administrative Law Judge in this case, "black lung" benefits were not intended by Congress to be "a gift of a grateful nation" to disabled miners. *See Boyd,* 479 F.Supp. at 848. The "black lung" program was intended to rectify the historical lack of adequate state compensatory schemes for miners suffering from pneumoconiosis. 30 U.S.C. § 901, as amended. Workmen's compensation programs, the federal disability insurance program, and the "black lung" program were all designed to replace income for disabled workers. The offset provisions were designed to prevent duplication of lost income. *See Boyd,* 479 F.Supp. at 849. Plaintiff's statutory interpretations would have the practical effect of providing him more funds than were necessary to provide appropriate replacement for what the statutory provisions deemed to be his pre-disability income. Given the clear intent of the three parallel benefit programs, plaintiff's interpretation must, by necessity, fail.

■ There is one additional issue involved in this case. By virtue of Pub. L. 95–239 § 4, 30 U.S.C. § 922(b) was amended to provide for offset of a state workmen's compensation award against federal "black lung" benefits only when that state award is made on the basis of disability due to pneumoconiosis. The amendment became effective on March 1, 1978,[5] many months after the exhaustion of the offsets in the instant case. While the parties did not note this circumstance in their initial arguments in this case, the court deems it appropriate to set to rest any notion that the amendment should be applied retroactively.

Public Law 95–239, known as the Black Lung Benefits Reform Act of 1977, liberalized the criteria by which a miner could establish entitlement to benefits under Part C of the original Act. In *Treadway v. Califano,* 584 F.2d 48 (4th Cir. 1978), the United States Court of Appeals ruled that the liberalized criteria could not be applied retroactively to pending appeals under Part B of the Act. This court is similarly unable to discern any basis for applying the amended offset provisions retroactively. It would seem simply illogical to apply some of the provisions of the Black Lung Benefits Reform Act of 1977 in a retroactive manner, while denying retroactive application to other provisions. Indeed, if Congress had intended the amendment to 30 U.S.C. § 922(b) to be a remedy for past deficiencies, it could have specifically provided for retroactive application.[6]

### III. CONCLUSION

The court must conclude that the plaintiff suffered no deprivation of constitutional rights as a result of the double offset of state workmen's compensation benefits. The court must also conclude that the Sec-

---

**3.** Part C of Title IV has its own offset provision. *See* 30 U.S.C. § 932(g), as amended.

**4.** Prior to the 1972 amendments, the Social Security Administration had considered the federal "black lung" benefits program to be a workmen's compensation plan within the meaning of 42 U.S.C. § 424a. Thus, federal "black lung" benefits had been offset against federal disability insurance benefits. In amending 30 U.S.C. § 922(b) so as to add the last sentence, it was this, and only this, offset that was eliminated. No broader intent can reasonably be inferred.

**5.** *See* Pub.L. 95–239 § 20(a).

**6.** Interestingly enough, the Part C offset provision, 30 U.S.C. § 932(g), had *always* provided for offset of state benefits against federal benefits only when the state award was premised on death or disability due to pneumoconiosis. This circumstance further undercuts plaintiff's argument as to statutory interpretation inasmuch as it indicates that the statutory draftsmen were well aware of the effect of not limiting the extent of the offset.

retary gave proper interpretation to the applicable statutory provisions. Finally, the court must conclude that the amended offset provisions of the Black Lung Benefits Reform Act of 1977 are not to be applied retroactively. Inasmuch as the court has found that the Secretary's final decision is supported by "substantial evidence," that decision must be affirmed. *See Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966). An appropriate judgment and order will be entered this day.