Albert W. FREEMAN, Plaintiff-Appellee,

v.

Patricia Roberts HARRIS, Secretary of Health and Human Services, Defendant-Appellant.

No. 78–3551.

United States Court of Appeals, Fifth Circuit.

Sept. 19, 1980.

J. R. Brooks, U. S. Atty., Elizabeth E. Todd, Asst. U. S. Atty., Birmingham, Ala., Walter E. McCabe, Jr., Baltimore, Md., for defendant-appellant.

William E. Mitch, Birmingham, Ala., for plaintiff-appellee.

Before FAY, KRAVITCH and RANDALL, Circuit Judges.

KRAVITCH, Circuit Judge.

The Secretary of Health, Education and Welfare ("the Secretary") appeals from the decision of the district court that the effect of HEW's practice of offsetting both Social Security disability payments and Black Lung benefits against state workers' compensation payments is contrary to the intent of Congress.[1] We affirm in part and reverse and remand in part.

The plaintiff, Albert Freeman, suffered an injury to his arm while employed in the coal mines of the U.S. Pipe and Foundry Company in Alabama. This injury entitled him to state workers' compensation payments which were awarded beginning September 8, 1969. Subsequently, Freeman was awarded Title II Social Security disability benefits[2] based on a finding that he was disabled.[3] Freeman filed an application for black lung benefits on April 30, 1970. Three years later, he was found to be totally disabled due to pneumoconiosis (black lung) and was awarded benefits under the Federal Coal Mine Health and Safety Act of 1969.[4]

Though at first blush it would seem that plaintiff has received everything he asked for and thus odd that he is a plaintiff at all, let alone a prevailing plaintiff, the arithmetic of the situation shows that this is not the case. Freeman's workers' compensation payments were $203.60 per month. His Social Security payments would have been $348.90 per month had he not received state workers' compensation. Because of a statutory deduction[5] of workers' compensation

---

1. This case was appealed once before but the appeal was dismissed because there was no final appealable order. *Freeman v. Califano*, 574 F.2d 264 (5th Cir. 1978).

2. 42 U.S.C. § 401 *et seq.* (1976).

3. Disability is defined at 42 U.S.C. § 423(d) (1976).

4. 30 U.S.C. § 901 *et seq.* (1976).

5. As is relevant to this case, 42 U.S.C. § 424a provides:

(a) If for any month prior to the month in which an individual attains the age of 62—
(1) such individual is entitled to benefits under section 423 of this title, and

(2) such individual is entitled for such month, under a workmen's compensation law or plan of the United States or a State, to periodic benefits for a total or partial disability (whether or not permanent), and the Secretary has, in a prior month, received notice of such entitlement for such month,
the total of his benefits under section 423 of this title for such month and of any benefits under section 402 of this title for such month based on his wages and self-employment income shall be reduced (but not below zero) by the amount by which the sum of—
(3) such total of benefits under sections 423 and 402 of this title for such month, and

benefits from Social Security payments, however, he actually received $226.90 per month from Social Security. Likewise, had Freeman not been receiving workers' compensation, his black lung benefits would have been $252.80 per month. Again, because of a statutory offset [6] against workers' compensation, he actually received $49.20 in black lung benefits.

In total, he received $479.70 per month through the three programs. Freeman is in court because had he not been awarded state workers' compensation payments, he would have received $601.70 per month through Social Security and Black Lung benefits. He contends that the $122.00 per month less that he received under the three programs compared to what he would have received under the two federal programs is an unconstitutional penalty for the exercise of his right to pursue state workers' compensation.[7] The district court avoided the constitutional issue and held simply that the "double offset" procedure followed by HEW had an effect contrary to Congressional intent. We agree, making it unnecessary to reach the constitutional claim.

It is important at the outset to clarify what is at issue and what is not. Freeman does not argue that the offset provisions of the Social Security Act are unconstitutional, *Richardson v. Belcher*, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971), nor does he argue that the offset provisions of the Black Lung Act are unconstitutional.[8] Furthermore, Freeman concedes that if a "double offset" was intended, the Secretary correctly calculated the offset under each program. Freeman's sole argument is that the effect of the "double offset" is contrary to the intent of Congress.

To determine whether or not the cumulative effect of the two offsets is inconsistent with Congressional intent, we must first determine what the goals of Congress were in implementing these two federal programs.

### Social Security Disability Insurance

Social Security was first proposed by President Roosevelt as part of the New Deal legislative reform. As initially instituted, the Social Security Act of 1935 contained no provisions for disability insurance. It did, however, provide old age and unemployment insurance which, as a general rule, the states were not providing.

In 1956 the Social Security Act was expanded to include monthly benefits for disabled wage earners.[9] As enacted in 1956,

---

(4) such periodic benefits payable (and actually paid) for such month to such individual under the workmen's compensation law or plan,

exceeds the higher of—

(5) 80 per centum of his "average current earnings", or

(6) the total of such individual's disability insurance benefits under section 423 of this title for such month and of any monthly insurance benefits under section 402 of this title for such month based on his wages and self-employment income, prior to reduction under this section.

**6.** The offset provision of the Black Lung Act is found in 30 U.S.C. § 922(b) (1976). As applicable to this case, that section provides:

(b) Notwithstanding subsection (a) of this section, benefit payments under this section to a miner or his widow, child, parent, brother, or sister shall be reduced, on a monthly or other appropriate basis, by an amount equal to any payment received by such miner or his widow, child, parent, brother, or sister under the workmen's compensation, unemployment compensation, or disability insurance laws of his State on account of the disability of such miner due to pneumoconiosis, and the amount by which such payment would be reduced on account of excess earnings of such miner under section 403(b) through (1) of Title 42 if the amount paid were a benefit payable under section 402 of Title 42. This part shall not be considered a workmen's compensation law or plan for purposes of section 424a of such Title.

**7.** Freeman ceased receiving workers' compensation benefits in February 1974. Accordingly, only a four-year period of "double offsets" is at issue.

**8.** The offset provision of the Black Lung Act has apparently not been the subject of a frontal constitutional challenge. Under the rationale of *Richardson v. Belcher*, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971), however, any such challenge would surely be fruitless.

**9.** Social Security Amendments of 1956, § 103(a), 70 Stat. 815 (1956) (current version at 42 U.S.C. § 423 (1976)).

there was a full offset of workers' compensation payments against Social Security disability benefits. 70 Stat. 816 (1956). "It is self-evident that the offset reflected a judgment by Congress that the workmen's compensation and disability insurance programs in certain instances served a common purpose, and that the workmen's compensation programs should take precedence in the area of overlap." *Richardson v. Belcher*, 404 U.S. at 82, 92 S.Ct. at 257. The offset provision was repealed in 1958, 72 Stat. 1025 (1958), but was reinstituted in 1965 in a slightly different form, 79 Stat. 406 (1965).

■ The reinstitution of the offset was triggered by data submitted to legislative committees which showed that in the majority of the states, the typical worker who was receiving workers' compensation and federal disability benefits actually received more in benefits than his pre-disability take-home pay. *Hearings on H.R. 6675 Before the Senate Comm. on Finance*, 89th Cong., 1st Sess. 151 (1965). This was thought to cause two evils: first, it reduced a worker's incentive to return to the work place and hence impeded rehabilitative efforts; and second, it created fears that the duplication of benefits would lead to an erosion of state workers' compensation programs. *Hearings on H.R. 6675 Before the Senate Comm. on Finance*, 89th Cong., 1st Sess. 252, 259, 366, 540, 738–40, 892–97, 949–54, 990 (1965).

Section 424a of title 42 was then enacted to deal with the problem. As is relevant here, it requires an offset of Social Security disability payments against workers' compensation so that the total benefits received by the worker under the two programs do not exceed 80% of his pre-disability income. Social Security disability payments, then, supplement state workers' compensation only when the workers' compensation payments are less than 80% of the worker's pre-disability income. This eradicated the

problem of a worker being financially better off disabled than if he or she returned to work.

It did not, however, *require* a worker to apply for state workers' compensation and thus did not insure that the state programs were primarily liable for such payments. However, because Social Security disability payments are less than 80% of a workers' pre-disability income, the system which resulted after the 1965 amendment did encourage workers to pursue state workers' compensation as well as federal Social Security.

*Federal Coal Mine Health and Safety Act of 1969*

The general purpose of Title IV of the Federal Coal Mine Health and Safety Act ("the Black Lung Benefits Act") is set out in 30 U.S.C. § 901(a) (1976). There Congress stated:

> Congress finds and declares that there are a significant number of coal miners living today who are totally disabled due to pneumoconiosis arising out of employment in one or more of the Nation's coal mines; . . . and that few States provide benefits for death or disability due to this disease . . . . It is, therefore, the purpose of this subchapter to provide benefits, in cooperation with the States, to coal miners who are totally disabled due to pneumoconiosis . . ; and to ensure that in the future adequate benefits are provided to coal miners and their dependents in the event of their death or total disability due to pneumoconiosis.

Through a complex statutory scheme,[10] the Black Lung Benefits Act seeks to compensate workers totally disabled by black lung. Recognizing that few states provided workers' compensation for disability resulting from this condition, the federal government undertook to be responsible for claims filed between September 20, 1969, and June 30, 1973. 30 U.S.C. § 921 (1976).[11] June 31,

---

10. For a thumbnail discussion of the scheme as initially devised, see Randolph & Humphreys, *Black Lung Benefits Reform: Mirage or Reality?*, 28 Lab.L.J. 555, 556–57 (1977).

11. The Department of HEW has the responsibility for processing and paying claims filed during this period. 30 U.S.C. § 921 (1976).

1973, through December 31, 1973, was set up as a transitional period. Initially, the federal government, through the Department of Labor, would determine eligibility for benefits of miners who filed claims during that period, and would pay the claims for those six months. On January 1, 1974, responsibility for the payment of such claims shifted to the responsible operator. 30 U.S.C. § 925(a)(5) (1976). Claims filed after December 31, 1973, are paid through state workers' compensation plans if the State has developed a plan which meets the approval of the Secretary of Labor. 30 U.S.C. § 931 (1976). If there is no approved state workers' compensation plan, such claims are processed by the Secretary of Labor and paid by the operator. 30 U.S.C. § 932 (1976).

█ The statutory scheme, then, provides that the federal government shall have the responsibility for payment of benefits to the backlog of miners who are black lung victims. By putting subsequent responsibility directly on the coal mine operators in the absence of a state plan of compensation, the statute encourages the operators to lobby their state legislators for adequate workers' compensation plans in this area.

█ More important for our inquiry, however, is the fact that the statute *requires* a claimant whose claim will be paid by the federal government [12] to pursue state workers' compensation prior to or contemporaneously with the pursuit of federal benefits if the worker would possibly be entitled to state benefits based on the black lung disability. 30 U.S.C. § 923(c) (1976). If the worker is entitled to workers' compensation, there is a dollar-for-dollar reduction of black lung benefits based on benefits received from the state.[13] There is a clear legislative desire, therefore, for state workers' compensation programs to be the primary provider of disability payments and

for the federal government to be responsible only if the state program is not adequate.

### Does the "Double Offset" Contravene Congressional Intent?

█ The Secretary argues that the basic purpose of both federal programs is income replacement and that a prime Congressional goal in both programs is to avoid over-replacement of the disabled worker's prior income. She asserts that under the factual situation in this case the goal of not over-replacing income can only be met through the "double offset." The Secretary concedes that another interest of Congress is to insure that state workers' compensation programs are the primary providers and to insure that the federal government is involved only when state programs are not sufficient.

We agree that the programs have twin goals and that, as far as possible, the law should be interpreted to carry out these goals. In this instance, however, both goals cannot be achieved. In essence, then, we are seeking to determine the intent of Congress as applied to a factual situation which obviously it did not foresee.

Only one other circuit has addressed this issue. On October 26, 1979, in an unpublished opinion, the Fourth Circuit affirmed the decision of the district court in *Boyd v. Califano*, 479 F.Supp. 846 (W.D.Va.1978). *Boyd* held that each individual offset clearly reflected Congressional intent in this area, and that therefore the effect of the double offset is of no significance.

Although Fourth Circuit cases are not binding on this court, they are persuasive. We are reluctant, therefore, to reject the precedent of the *Boyd* case and thus place miners in this area in a better position relative to benefits than their brethren to

---

**12.** That is, claimants who file their claim for benefits between September 20, 1969 and June 30, 1973. The plaintiff is in this category.

**13.** As is relevant to Freeman's claim, the offset applies even though workers' compensation was not paid because of black lung. This law

has been changed to provide for an offset only if workers' compensation is paid because of disability due to black lung. 30 U.S.C. § 922(b) (1976). The amendment changing that law was effective March 1, 1978, and was not given retroactive effect.

the north. We are compelled to do so, however, because we feel the *Boyd* courts failed to explain adequately why Congress would intentionally *discourage* miners who are entitled to Social Security disability benefits, black lung benefits, and workers' compensation benefits for ailments other than black lung [14] from pursuing state workers' compensation.

It is undeniable that the effect of the double offset is to discourage a miner from pursuing workers' compensation, and thus to encourage the miners to rely exclusively on the federal government for compensation. This result is clearly at odds with a prime Congressional intent of making state workers' compensation the program to which citizens should turn first for disability compensation.

Moreover, we cannot say that permitting only one offset and not permitting the other in cases where a miner is entitled to benefits from all three programs necessarily runs counter to Congressional intent. It is true that if either the Social Security offset or the black lung offset is not made, the miner may receive more than 100% replacement of his pre-disability income. We recognize that ordinarily a greater than 100% replacement of income runs contrary to Congressional intent. It is not clear, however, that Congress intended 100% of pre-disability income to be the absolute maximum a worker could recover if he is drawing federal benefits. In fact, several aspects of the law suggest that such an absolute ceiling on federal benefits was not the Congressional intent. Before the 1972 amendments there was an offset of black lung benefits against Social Security dis-

ability payments. That was deleted by a 1972 amendment making it clear that black lung benefits are not to be considered workers' compensation for purposes of Social Security. 30 U.S.C. § 922(b) (1976). Thus, Congress did away with a provision which had an ultimate effect (decreased benefits) similar to the double offset being considered today and which had the effect of constructing a ceiling on federal benefits of 80% of the worker's pre-disability income.

In light of that amendment we cannot say a ceiling on federal benefits was a paramount Congressional intent in setting up these programs.[15] As discussed above, however, Congress has clearly exhibited an intent to encourage primary reliance on state compensation programs. Because the double offset runs absolutely counter to the latter intent, and the intent to limit benefits to less than the worker's pre-disability income is not as obvious as the Secretary represents, we hold the double offset contravenes Congressional intent.

Deciding that the double offset has an effect contrary to Congressional intent does not end our inquiry, but rather presents us with the problem of determining how to apply the statutes so they do not have an effect which runs counter to Congressional intent. The district court resolved the issue by deciding that state workers' compensation benefits should be offset against the first federal benefit awarded. This solution was explained as "administratively simple to apply" and as consistent with the 1978 amendments to the Black Lung Act.[16]

Our problem with the district court solution is that it does more than correct the

---

14. The statute actually requires workers who can receive workers' compensation because of black lung to file for it. Accordingly, though those employees might prefer not to file for state workers' compensation because of the effect of the double offset, they have no choice. Hence, as to those employees, state workers' compensation will remain the primary provider, and the effect of the double offset does not contravene Congressional intent.

15. In fact, if that was as important to Congress as the Secretary seems to believe, it could easily enough have been written into the law.

16. Because Social Security was the first federal benefit awarded, this solution would leave Freeman's Black Lung benefits untouched by a setoff. This result is consistent with the 1978 amendments to the Black Lung Act, *see* note 13, *supra*, because Freeman was not drawing workers' compensation based on his black lung disability.

found inconsistency between the laws and Congress' intent. Congress obviously did not intend the intersection of the programs to discourage a worker from applying for state workers' compensation. Thus, to correct the effect of the double offset and to allow the programs to operate in concert consistently with Congressional intent, the Secretary should be able to offset Social Security and black lung benefits against workers' compensation, but the total offset shall not exceed 100% of the miner's workers' compensation benefits.

We AFFIRM IN PART and REVERSE AND REMAND IN PART for further proceedings consistent with this opinion.