89 P.3d 302 (2004)
121 Wash.App. 530
Donald R. GORMAN and Flaellen Gorman, husband and wife, Appellants,
v.
GARLOCK, INC.; Foster-Wheeler Energy Corp.; Uniroyal, Inc.; Metropolitan Life Insurance Co.; Asbestos Corporation Ltd.; Combustion Engineering, Inc.; Crown Cork & Seal Company, Inc.; Gasket Co.; Fraser's Boiler Service, Inc.; Riley Stoker Corp.; Saberhagen Holdings, Inc., Defendants, and
Lockheed Shipbuilding Company and Todd Shipyards Corp., Respondents.
Wilhemina Helton for herself and as Personal Representative for the Estate of Eddie Helton, a/k/a Eddie Hilton, deceased, Appellants,
v.
Todd Shipyards Corporation, Respondent, and
Metropolitan Life Insurance Co.; Asbestos Corporation, Ltd.; Crown Cork & Seal Company, Inc.; Foster Wheeler Energy Corporation; Fraser's Boiler Service, Inc.; and Saberhagen Holdings, Inc., Defendants.
No. 52188-8-I.
Court of Appeals of Washington, Division 1.
May 3, 2004.
*303 William Rutzick, Schroeter, Goldmark & Bender, P.S., Seattle, WA, for Appellant.
Robert H. Madden, William H. Beaver, Jr., Walter E. Barton, Karr Tuttle Campbell, Seattle, WA, for Respondent.
AGID, J.
Donald and Flaellen Gorman and Wilhemina Helton, acting individually and as a personal representative of the estate of Eddie Helton, appeal the orders dismissing their cases against Todd Shipyards Corporation (Todd) and Lockheed Shipbuilding Company (Lockheed). They contend the trial court erred by ruling that they failed to state a claim under the Washington Industrial Insurance Act. But Washington law prohibits employees who are entitled to federal maritime workers' compensation from asserting state claims against their maritime employers. Gorman and Helton are entitled to federal maritime workers' compensation for injuries sustained during their employment with Lockheed and Todd. And while they could have a claim against a later land-based employer under the Washington act, the trial courts correctly ruled that they cannot make a claim against Todd and Lockheed under that statute.

FACTS
From 1953 through 1975, Donald Gorman worked as a boilermaker, shipfitter, and superintendent in several shipyards and industrial sites throughout Washington. At various times during this period, Gorman worked at Lockheed Shipbuilding Company and Todd Shipyards where he worked with boilers insulated with products containing asbestos and in various ship parts containing asbestos. In 2001, Gorman learned he had lung cancer caused by asbestos exposure. He is currently being treated for the disease. Gorman and his wife instituted this action against Lockheed and Todd, asserting that both employers had control over the site where asbestos-containing products were used but failed to take corrective action to eliminate a dangerous condition that they knew or should have known existed. Lockheed and Todd moved to dismiss the case for failure to state a claim, and the trial judge granted the motion in February 2003.
Eddie Helton worked as a shipscaler at Todd from 1944 through 1969. During that time, he was exposed to asbestos and products containing asbestos. In 1984, Helton learned he also had lung cancer caused by asbestos exposure. He died from the disease in 1999. Helton's wife instituted this action against Todd, claiming that Todd knew an asbestos-related injury was certain to occur to shipscalers but willfully disregarded the knowledge by continuing to expose them to asbestos fiber. Todd moved to dismiss the motion for failure to state a claim, and the trial judge granted that motion in May 2003.
Both Gorman and Helton appeal. We consolidated their cases on appeal.

*304 DISCUSSION
The trial courts dismissed these complaints for failure to state a claim under CR 12(b)(6). A dismissal under this rule is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts that would justify recovery.[1] A plaintiff's factual allegations are presumed to be true, and a court may consider hypothetical facts.[2] CR 12(b)(6) motions "should be granted only `"sparingly and with care".'"[3] Here, the trial judges ruled that Gorman and Helton failed to state a claim because their claims fell under federal maritime law, and RCW 51.12.100 required that they be dismissed. We review these orders de novo.[4]
I. Title 51 and the Longshore and Harbor Workers' Compensation Act
Title 51 RCW, also known as the Industrial Insurance Act (IIA), abolishes all civil actions for employment-related injuries.[5] Employees may not sue their employers for injuries sustained on the job, and their only remedy is workers' compensation under the IIA.[6] The legislature enacted this limitation to improve injured employees' remedies while decreasing expense to employers and the public.[7] The only exception is RCW 51.24.020, which allows an employee to sue an employer where the employer has deliberately injured the employee. An employer acts with deliberate intent under this provision of the statute when it had "actual knowledge that an injury was certain to occur and willfully disregarded that knowledge."[8] RCW 51.24.020 is designed to deter employers from intentionally wrongful workplace behavior[9] because employers who act egregiously "should not burden and compromise the industrial insurance pool."[10]
Gorman and Helton bring their claims against Todd and Lockheed under this provision of the statute. But under RCW 51.12.100(1), an employee "for whom a right or obligation exists under the maritime laws or federal employees' compensation act for personal injuries or death" may not bring any claim under a Title 51 provision. Lockheed and Todd argue that Gorman and Helton have a right to compensation under the federal Longshore and Harbor Workers' Compensation Act (LHWCA),[11] a maritime statute, and thus may not bring a Title 51 action.[12]
Under the LHWCA, employers are liable for the disability or death of employees arising from injuries "occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)."[13] Employers are liable *305 for these injuries regardless of fault.[14] The LHWCA is remedial in nature[15] and aims to "encourage the prompt and efficient administration of compensation claims."[16] An employer's LHWCA liability is exclusive. That is, its LHWCA liability replaces all other liability to which the employer may be subject, unless the employer fails to pay compensation as required.[17]
Gorman and Helton correctly argue that federal and state remedies may coexist for maritime workers who are injured on land. In Sun Ship, Inc. v. Pennsylvania, the United States Supreme Court held that the Pennsylvania workers' compensation scheme could compensate an employee who sustained a land-based injury covered by the LHWCA.[18] The Court noted that prior to 1972, local maritime injuries could be compensated under either state or federal law,[19] and Congress did not intend to alter this accepted understanding when it amended the LHWCA in 1972.[20] Drawing partly upon Sun Ship, the Washington Supreme Court in Stevedoring Services of America, Inc. v. Eggert also held that state law remedies may supplement the LHWCA.[21] While case law holds that an entitlement under the LHWCA does not preclude a maritime employee from seeking relief under the workers' compensation statute, we must determine whether RCW 51.12.100(1) does preclude it. Both trial court judges concluded that it does.
II. Effect of RCW 51.12.100(1)
In Lindquist v. Department of Labor and Industries, this court considered whether a longshoreman killed at the North Terminal of the Port of Bellingham was covered by Title 51 or the LHWCA.[22] We held that because the employee qualified for compensation under the LHWCA, RCW 51.12.100 expressly precluded a claim under Title 51.[23] Similarly, in Esparza v. Skyreach Equipment Inc., we recognized that RCW 51.12.100 removed a shipyard employer from Washington's statutory scheme and placed it under the LHWCA.[24] The Ninth Circuit has also held that Washington's workers' compensation scheme excludes workers covered by the LHWCA.[25] The court observed that nothing in the federal legislation prohibited the state from excluding from coverage workers who are eligible for LHWCA benefits.[26] "When Congress wants to require states to be primary providers of benefits or require claimants to pursue state benefits prior to or contemporaneously with federal benefits, it knows how to do so."[27]
Gorman and Helton nonetheless argue that these cases are inconsistent with the United States Supreme Court's holding in Sun Ship and the Washington Supreme Court's holding in Stevedoring. But the Sun Ship court considered only whether the LHWCA is the exclusive remedy, concluding that federal and state jurisdiction could be concurrent. The Sun Ship court did not even discuss the effects of a state statute like RCW 51.12.100, *306 which precludes all state jurisdiction in certain instances.[28] Similarly, Stevedoring did not address the relationship between RCW 51.12.100 and the LHWCA. Rather, it answered the question whether the LHWCA preempts state law. And in a footnote, the Stevedoring court recognized that, under RCW 51.12.100, Title 51's provisions do not apply to LHWCA-covered employees.[29] Gorman and Helton are correct that the LHWCA does not preempt their RCW 51.24.020 claims. But RCW 51.12.100 does preempt them. Because they have the right to compensation under federal law, they cannot state a claim under the Washington statute.
III. Hypothetical Facts
Gorman and Helton argue that their claims are viable if the court considers certain hypothetical facts. In deciding a CR 12(b)(6) motion, a court is to consider "all conceivable facts" in support of the plaintiffs' allegations,[30] including hypothetical facts.[31] This is so even if the facts are presented for the first time on appeal.[32] "Neither prejudice nor unfairness is deemed to flow from this rule, because the inquiry on a CR 12(b)(6) motion is whether any facts which would support a valid claim can be conceived."[33]
Gorman and Helton ask the court to assume hypothetically that they lack LHWCA rights, and RCW 51.12.100 thus does not apply, because they settled with third parties without obtaining their employers' consent. Under section 33(g) of the LHWCA, if an employee settles with a third person other than the employer for an amount less than the compensation to which the employee is entitled, the employee must obtain the employer's approval before the settlement is executed.[34] If the employee fails to do so, all rights to compensation and medical benefits under the LHWCA terminate.[35] According to Gorman and Helton, because they hypothetically settled with a third party without their employers' consent, they have no rights under the LHWCA and thus RCW 51.12.100 does not apply to make them ineligible under state law.
While we must consider all conceivable facts, we cannot consider allegations that contradict the specific provisions and intent of the statute. The hypothetical must be reasonable and lawful. Allowing Gorman and Helton to proceed with their claims solely because they failed to comply with section 33(g) would stand congressional intent in enacting section 33(g) on its head. It would encourage employees to settle with third parties without notifying their employers simply to remove themselves from the LHWCA's coverage. In enacting section 33(g), Congress intended to protect employers from employees who accept too little from the settling third party.[36] To accept Gorman's and Helton's argument would be to encourage workers to improperly disregard section 33(g)'s requirement. This hypothetical is not one we can consider.
Gorman and Helton also ask the court to assume that they "may not" have rights under the LHWCA for whatever reason, and it is thus unfair to dismiss their claims. To have LHWCA rights, an employee must satisfy *307 the situs and status tests.[37] The employee satisfies the situs test if his or her injury occurred upon navigable waters "including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel."[38] Gorman and Helton satisfy this test by alleging in their complaint that they were injured while working on ships in Todd's and Lockheed's shipyards.
The employee satisfies the status test if he or she is "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker[.]"[39] Gorman alleges that he was injured during his work as a boilermaker, shipfitter, and superintendent, and Helton alleges he was injured while working as a shipscaler. Both meet the LHWCA's status test. They therefore have rights under the LHWCA. "Both in legal and general usage, the normal meaning of entitlement includes a right or benefit for which a person qualifies, and it does not depend upon whether the right has been acknowledged or adjudicated. It means only that the person satisfies the prerequisites attached to the right."[40] Because Gorman and Helton do have rights under the LHWCA, we cannot hypothesize that they do not.
Finally, Gorman claims that he had at least one asbestos-exposing job after his shipyard employment. Because his last injurious asbestos exposure took place somewhere other than the shipyards, Gorman argues that the LHWCA does not cover him and he may still maintain his action. But under Todd Shipyards Corp. v. Black, a LHWCA-covered employer is liable even if the employee was exposed to asbestos in later, non-LHWCA, employment.[41] Therefore, while Gorman's asbestos exposure in a later non-maritime job qualifies him for Washington benefits on that later-employer's account, it does not remove his maritime claim from the scope of the LHWCA.
IV. RCW 51.12.102 Provides Interim Benefits to Employees With Asbestos-Related Diseases While Their Claims' Jurisdiction is Determined
Gorman and Helton argue that they are entitled to Washington workers' compensation benefits under RCW 51.12.102 and may therefore sue Todd and Lockheed under the Washington act. Under this provision of the statute, state workers' compensation benefits shall be furnished to any employee "who may have a right or claims for benefits under the maritime laws of the United States resulting from an asbestos-related disease" if objective clinical findings substantiate the claim, the employee's work history includes prima facie injurious exposure to asbestos fibers, and the employee worked in a Washington job covered by Title 51.[42] Gorman and Helton argue that they are entitled to benefits under this provision. Lockheed and Todd argue that the statute is simply an interim measure to assure that employees will receive benefits while the Department of Labor and Industries (DLI) determines the proper jurisdiction for the employee's claim.
When interpreting a statute, we must first determine whether its language is ambiguous; that is, whether it is capable of more than one reasonable interpretation.[43] If the *308 language is plain and unambiguous, we ascertain the statute's meaning from the language of the statute itself.[44] But if it is ambiguous or unclear, we may look to legislative history to discern legislative intent.[45] We must reconcile apparently conflicting statutes so as to give effect to each of them.[46] To resolve apparent conflicts, courts generally prefer the more specific and more recently enacted statute.[47] We may also consider the statutes' sequence.[48]
RCW 51.12.102's relation to .100 is unclear, so we turn to legislative history. In 1925, the legislature adopted .100(1)'s general rule precluding claims by injured employees who had rights under maritime laws.[49] The legislature adopted .102 in 1988.[50] RCW 51.12.102 does not refer to .100 in any way, but the session laws indicate that it was intended to amend .100.[51]
According to the Final Legislative Report of the 1988 Sessions, the legislature was concerned that workers with asbestos-related diseases frequently had asbestos exposure in many different jobs, some of which may be covered under Title 51 while others may be covered under the LHWCA.[52] "If a dispute arises over which jurisdiction is responsible for coverage, a worker's claim may not be accepted by either jurisdiction until the liability question is settled."[53] To alleviate this concern, the legislature enacted .102 to authorize DLI to pay industrial insurance benefits to any worker who may have a claim under the federal maritime laws because of asbestos-related disease:
The department will make a determination of insurer liability and will pay benefits until the liable insurer begins payments or benefits are otherwise properly terminated.

. . . .
... If the department determines that benefits are owed to the claimant by a federal program or by an insurer under the federal maritime laws, the department is authorized to pursue the federal insurer on behalf of the claimant to recover the benefits due and, on its own behalf, to recover costs and benefits paid.... [[54]]
The legislative history establishes that RCW 51.12.102 is an interim measure intended to ensure that there is some coverage until jurisdiction is determined.
Interpreting .102 as an interim measure is consistent with the statute's express application to employees who "may have a right or claim for benefits under the maritime laws of the United States[.]"[55] It is also consistent with the statute's stated purpose of ensuring compensation to those with asbestos-related injuries[56] and with the purpose of .100, which is to prevent double recovery by the employee.[57] *309 Finally, it is consistent with the 1987 and 1993 DLI reports to the legislature's Labor and Commerce Committees. The 1987 report expressed DLI's concern that employees would not receive benefits until after jurisdiction disputes were resolved.
A legitimate criticism of this policy from the claimant's perspective is that a jurisdictional question should not affect their ability to obtain timely benefits once the condition has been found to be occupational in nature. The feasibility of a policy change by the department is however clouded by the uncertainty of receiving federal reimbursement in those cases eventually found to be under [LHWCA] coverage.[[58]]
And written five years after .102's enactment, the DLI's 1993 report describes the statute as
creat[ing] a special fund for the payment of workers' compensation benefits to victims of asbestos-related diseases caught in a dispute between federal and state programs over which program is responsible for the claim. As a result of the legislative act, codified as RCW 51.12.102, benefits under the Industrial Insurance Act are to be paid from the Medical Aid Fund until the responsible federal program insurer begins making payment....[[59]]
Despite its legislative history, Gorman and Helton argue that .102 is actually an exception to .100. But if the legislature had intended to carve out a specific exception to.100, it would have explicitly stated so. And even if .102 were an exception to .100, it would not save Gorman's and Helton's claim under RCW 51.24.020. RCW 51.12.102 does not allow a plaintiff to disregard the claim bar in section .100 so he can maintain a suit against an employer under RCW 51.24.020. Rather, it allows the plaintiff to receive workers' compensation benefits.[60] While we certainly sympathize with the plaintiffs' desire to recover fully for their injuries, the applicable statutes do not permit them to
bring a tort claim against Todd and Lockheed. We affirm.
WE CONCUR: COLEMAN and BAKER, JJ.
NOTES
[1] Tenore v. AT & T Wireless Servs., 136 Wash.2d 322, 329-30, 962 P.2d 104 (1998), cert. denied, 525 U.S. 1171, 119 S.Ct. 1096, 143 L.Ed.2d 95 (1999) (citing Hoffer v. State, 110 Wash.2d 415, 420, 755 P.2d 781 (1988), aff'd on reh'g, 113 Wash.2d 148, 776 P.2d 963 (1989); Bravo v. Dolsen Cos., 125 Wash.2d 745, 750, 888 P.2d 147 (1995)).
[2] Id. (citing Cutler v. Phillips Petroleum Co., 124 Wash.2d 749, 755, 881 P.2d 216 (1994), cert. denied, 515 U.S. 1169, 115 S.Ct. 2634, 132 L.Ed.2d 873 (1995)).
[3] Bravo, 125 Wash.2d at 750, 888 P.2d 147 (quoting Haberman v. Wash. Pub. Power Supply Sys., 109 Wash.2d 107, 120, 744 P.2d 1032 (1987), opinion amended, 109 Wash.2d 107, 750 P.2d 254 (1988)).
[4] Tenore, 136 Wash.2d at 329-30, 962 P.2d 104 (citing Hoffer, 110 Wash.2d at 420, 755 P.2d 781; Bravo, 125 Wash.2d at 750, 888 P.2d 147).
[5] RCW 51.04.010.
[6] Id.
[7] Id.
[8] Birklid v. Boeing Co., 127 Wash.2d 853, 865, 904 P.2d 278 (1995).
[9] Id. at 873, 904 P.2d 278.
[10] Id. at 859, 904 P.2d 278.
[11] 33 U.S.C. §§ 901, et seq.
[12] An employee may not sue his employer for intentional torts under the federal maritime statutes. 33 U.S.C. § 905(a); Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 194, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983).
[13] 33 U.S.C. § 903(a).
[14] 33 U.S.C. § 904(b).
[15] Potomac Elec. Power Co. v. Dir., Office of Workers' Comp. Programs, 606 F.2d 1324, 1327 (D.C.Cir.1979), reversed on other grounds, 449 U.S. 268, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980).
[16] Rodriguez v. Compass Shipping Co., Ltd., 451 U.S. 596, 612, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981) (citing Potomac Elec. Power Co. v. Dir., Office of Workers Comp. Programs, 449 U.S. 268, 282, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980)).
[17] 33 U.S.C. § 905(a).
[18] 447 U.S. 715, 716, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980).
[19] Id. at 717-19, 100 S.Ct. 2432.
[20] Id. at 722, 100 S.Ct. 2432.
[21] 129 Wash.2d 17, 36, 914 P.2d 737 (1996).
[22] 36 Wash.App. 646, 647, 677 P.2d 1134, review denied, 102 Wash.2d 1001 (1984).
[23] Id. at 650, 677 P.2d 1134.
[24] 103 Wash.App. 916, 937-38, 15 P.3d 188 (2000), review denied, 144 Wash.2d 1004, 29 P.3d 718 (2001).
[25] E.P. Paup Co. v. Dir., Office of Workers Comp. Programs, 999 F.2d 1341, 1349 (9th Cir.1993).
[26] Id. at 1349-50.
[27] Id. at 1350 (citing Rose v. Ark. State Police, 479 U.S. 1, 4, 107 S.Ct. 334, 93 L.Ed.2d 183 (1986); Freeman v. Harris, 625 F.2d 1303, 1307 (5th Cir.1980)).
[28] And while California and Louisiana courts allow LHWCA-covered employees to maintain intentional tort actions against their employers, neither state has a statutory provision like RCW 51.12.100. See Lenane v. Continental Maritime of San Diego, Inc., 61 Cal.App.4th 1073, 72 Cal. Rptr.2d 121, cert. denied, 525 U.S. 1002, 119 S.Ct. 513, 142 L.Ed.2d 425 (1998); Moss v. Dixie Mach., Welding & Metal Works, Inc., 617 So.2d 959, cert. denied, 510 U.S. 976, 114 S.Ct. 469, 126 L.Ed.2d 420 (1993).
[29] Stevedoring, 129 Wash.2d at 34 n. 5, 914 P.2d 737 (citing E.P. Paup, 999 F.2d at 1341).
[30] Haberman, 109 Wash.2d at 163.
[31] Bravo, 125 Wash.2d at 750, 888 P.2d 147.
[32] Id. (citing Halvorson v. Dahl, 89 Wash.2d 673, 675, 574 P.2d 1190 (1978)).
[33] Id. (citing Halvorson, 89 Wash.2d at 674-75, 574 P.2d 1190).
[34] 33 U.S.C. § 933(g)(1).
[35] 33 U.S.C. § 933(g)(2).
[36] Taylor v. Dir., Office of Workers Comp. Programs, 201 F.3d 1234, 1237 (9th Cir.2000) (citing Cretan v. Bethlehem Steel Corp., 1 F.3d 843, 846 (9th Cir.1993), cert. denied, 512 U.S. 1219, 114 S.Ct. 2705, 129 L.Ed.2d 833 (1994)).
[37] Lindquist, 36 Wash.App. at 652-53, 677 P.2d 1134.
[38] 33 U.S.C. § 903(a). See also Lindquist, 36 Wash.App. at 653, 677 P.2d 1134.
[39] 33 U.S.C. § 902(3). See also Lindquist, 36 Wash.App. at 653-54, 677 P.2d 1134.
[40] Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 477, 112 S.Ct. 2589, 120 L.Ed.2d 379 (citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)), cert. denied, 505 U.S. 1218, 112 S.Ct. 3026, 120 L.Ed.2d 897 (1992).
[41] 717 F.2d 1280, 1287 (9th Cir.1983), cert. denied, 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984). See also, Campbell v. Lockheed Shipbuilding Corp., 115 Wash.App. 8, 11, 61 P.3d 1160 (2002) (an employer who exposed an employee to asbestos is liable for LWHCA-based compensation even if there is no proof that that employer was at fault for the resulting disease).
[42] RCW 51.12.102(1).
[43] Edelman v. State ex. rel. Pub. Disclosure Comm'n, 116 Wash.App. 876, 882-83, 68 P.3d 296 (2003), review granted, 150 Wash.2d 1025, 82 P.3d 242 (2004) (citing Vashon Island Comm. for Self Gov't v. Wash. State Boundary Review Bd. for King County, 127 Wash.2d 759, 771, 903 P.2d 953 (1995)).
[44] State v. Grays Harbor County, 98 Wash.2d 606, 656 P.2d 1084 (1983) (citing In re Lehman, 93 Wash.2d 25, 27, 604 P.2d 948 (1980); Garrison v. Wash. State Nursing Bd., 87 Wash.2d 195, 196, 550 P.2d 7 (1976)).
[45] Id. at 607-08, 656 P.2d 1084 (citing Whitehead v. Dep't of Social & Health Servs., 92 Wash.2d 265, 268, 595 P.2d 926 (1979); Garrison, 87 Wash.2d at 196, 550 P.2d 7; Ropo, Inc. v. City of Seattle, 67 Wash.2d 574, 577, 409 P.2d 148 (1965)).
[46] Tunstall ex rel. Tunstall v. Bergeson, 141 Wash.2d 201, 211, 5 P.3d 691 (2000) (citing State v. Fagalde, 85 Wash.2d 730, 736, 539 P.2d 86 (1975); Fray v. Spokane County, 134 Wash.2d 637, 648, 952 P.2d 601 (1998)), cert. denied, 532 U.S. 920, 121 S.Ct. 1356 (2001).
[47] Id. (citing In re Estate of Little, 106 Wash.2d 269, 283, 721 P.2d 950 (1986); Morris v. Blaker, 118 Wash.2d 133, 147, 821 P.2d 482 (1992)).
[48] Id. (citing Dep't of Labor & Indus. v. Estate of MacMillan, 117 Wash.2d 222, 229, 814 P.2d 194 (1991)).
[49] Laws of 1925 ex. sess. ch. 111 § 1.
[50] Laws of 1988 ch. 271.
[51] Id.
[52] Final Legislative Report, 50th Wash. Leg., 1987 Second and Third Special and 1988 Regular and First Special Sessions at 70.
[53] Id.
[54] Id. (emphasis added).
[55] RCW 51.12.102(1) (emphasis added).
[56] Final Legislative Report at 70.
[57] Esparza, 103 Wash.App. at 938, 15 P.3d 188; E.P. Paup, 999 F.2d at 1350.
[58] Department of Labor and Industries, Asbestos Related Disease: A Report to the House Commerce and Labor Committee, September 12, 1987, at 3-4.
[59] Department of Labor and Industries, Asbestos Related Disease: A Report to the Commerce and Labor Committee of the Washington State House of Representatives and Labor and Commerce Committee of the Washington State Senate, January 1993, at ii (emphasis added).
[60] RCW 51.12.102 ("The department shall furnish the benefits provided under this title....").