LEON F. STRANGER, Individually and as Administrator of the Estate of LEONA P. STRANGER, Deceased, Appellant, *v.* NEW YORK STATE ELECTRIC & GAS CORP. et al., Defendants; CITY OF ITHACA, Respondent.

Third Department, March 28, 1966.

*Wiggins, Tsapis & Golder* (*Walter J. Wiggins* of counsel), for appellant.

*Bryant, Mazza & Williamson* (*Frederick B. Bryant* of counsel), for respondent.

GIBSON, P. J. Appeal is taken from an order of the Supreme Court at Special Term which, as to defendant city, dismissed, for insufficiency, the amended complaint in an action to recover wrongful death damages, caused when on February 15, 1963 an unvented open-flame gas heater " exploded or otherwise caused flames to reach plaintiff's intestate ".

The amended complaint alleges that the use of the heater was in violation of the Building Code and the Housing Code of the City of Ithaca and that the city on March 10, 1959 notified the defendant owner and the defendant lessee that a dangerous condition existed by reason of the use in the building of unvented portable gas heaters, and on March 16, 1959 directed them to correct that condition and a number of other dangerous conditions or to vacate the building, failing which the city would demolish it. The amended complaint does not specifically relate these generalities to the particular apartment and particular heater here involved; nor does it plead or otherwise indicate proximate cause generally. It seems reasonably clear, however, that, under the codes, the use of a portable and readily removable heater did not require that the building " be demolished by the   *   *   *   defendant City ". (Indeed, appellant's brief states than an inspection by the Building Commissioner's office *on the day before the fire* gave rise to a recommendation " that the apartment of the plaintiff *also* be declared unfit for human habitation and condemned.") After these general allegations of the violations of the codes by respondent city's codefendants, the amended complaint proceeds (par. 15) to specify the city's negligence as in (a) " failing to condemn the apartment ", (b) " permitting an open flame, unvented gas fired heater to be used in said apartment ", (c) " failing to enforce within a reasonable time the recommendations, orders and directives made by the Building Commissioner   *   *   *   dated March 16, 1959, and by the Fire Chief   *   *   *   dated March 10, 1959, to the defendant owner and the defendant lessee " and (d) " failing to take any steps to render said premises safe for occupancy or to condemn the same when said defendant, City of Ithaca, had full knowledge of the dangerous condition existing in said apartment."

The case before us cannot, in our view, be distinguished from *Motyka* v. *City of Amsterdam* (15 N Y 2d 134) and *Rivera* v. *City of Amsterdam* (5 A D 2d 637). (The two latter cases involved the same building, the same allegedly defective oil heater and the same fire.) In those cases, as in this, the fire was attributed to a defective heater, of which the city had prior knowledge. The city, nevertheless, failed, as did the city in

the case before us, to follow up its knowledge with action to require that the heater be made safe or its use discontinued. In those cases, the basis of the city's supposed liability was claimed by the plaintiffs to lie in sections 303 and 305 of the Multiple Residence Law; here, plaintiff would have us look to the comparable provisions of the Ithaca Building Code and Housing Code. As was said by (then) Justice BERGAN, writing for a unanimous court in *Rivera*: " No liability is cast upon public authority by the Multiple Residence Law for private damage resulting from failure to enforce its directory provisions," (5 A D 2d 637, 638.) We find nothing in either of the Ithaca codes to require a different conclusion here; and, indeed, subdivision (b) of section 13-2 of the Ithaca Housing Code specifically provides for conformity to the Multiple Residence Law. It was said in *Rivera*, further, that, " Proceedings by public authority in a court to enforce statute law is in the nature of a governmental function, the failure of which is not actionable on behalf of a private person suffering damage " (p. 638); and the apparent intent of the statute to require enforcement by resort to judicial process was noted; as we observe that similar proceedings are provided by sections 6-16 (subd. [e]) and 6-17 of the Ithaca Building Code. The holding in *Rivera* was quoted at some length and specifically approved in *Motyka* (*supra*), which also cites the general rule that " liability arises out of a statute only in limited instances where disregard of the command of the statute results in damage to one of the class for whose especial benefit the statute was enacted " (p. 139). Similar actions were found without legal basis in *Messineo* v. *City of Amsterdam* (17 N Y 2d 523) and *Henry* v. *City of New York* (15 N Y 2d 726), the latter case being, like this, an appeal from dismissal of the complaint for insufficiency.

Of necessity, appellant argues that the City of Ithaca is liable for negligent failure to abate or enjoin, under the local codes, the allegedly dangerous condition known to exist, although in *Motyka* (*supra*) and *Rivera* (*supra, p.* 638) the City of Amsterdam was not liable for its failure, under the substantially similar provisions of the Multiple Residence Law and the Public Health Law, to abate or enjoin an alleged nuisance of which it had knowledge. Appellant contends somewhat inconsistently with his reliance upon the local codes, that this case is an exception to the general rule and is, instead, within the common-law principle " that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all " (*Moch Co.* v. *Rensselaer Water Co.*, 247 N. Y. 160, 167); but in proceeding with their inspections and

in giving warnings, the city's employees were not volunteers or persons assuming to act gratuitously, within the meaning of the rule, so as thereby to render themselves subject to a duty which would not have existed otherwise. The duty had previously been imposed by their employment and the question is not as to the existence of a gratuitously assumed duty but, rather, whether the duty actually pre-existing and dictated by the employment extended to the individual, plaintiff's intestate; and to that the answer of *Moch,* as of *Motyka* and *Rivera,* is negative. Assuming, nevertheless, that the rule contended for might otherwise apply, it seems clear that the answer to the "query * * * whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good" (*Moch, supra,* p. 168) is to be found in the second alternative. A legal relationship, albeit a neutral one, existed as between the municipality and the decedent and that relationship could not be personalized, and changed to one of liability by reason of the city employees' performance of the routine governmental functions assigned them. Otherwise, as was said in *Moch* (*supra,* p. 168) in only slightly different context, "liability would be unduly and indeed indefinitely extended by [such an] enlargement of the zone of duty * * * 'The law does not spread its protection so far'". Whether well or imperfectly performed, the city employees' acts were governmental acts undertaken pursuant to their employment and, even if it could be assumed, nevertheless that they were such as to evoke the rule of *Moch,* it is abundantly clear that they resulted in no new or added risk and gave rise to no new or different situation or obligation upon which plaintiff's intestate could or did rely, to her harm. (See Restatement, Torts 2d, § 323 and Comment *c.*) The amended complaint pleads neither of these two conditions, which are prerequisite to the operation of the *Moch* rule, nor does it allege facts from which either could be inferred.

Appellant cites *Runkel* v. *Homelsky* (286 App. Div. 1101, affd. 3 N Y 2d 857; see, also, *Runkel* v. *City of New York,* 282 App. Div. 173) which the Court of Appeals has, however, distinguished from the defective heater cases, stating that *Runkel* "involved different facts and different statutes"; and, further, that *Runkel* "does not create liability in case of general failure to supply police or fire protection" (*Motyka* v. *City of Amsterdam,* 15 N Y 2d 134, 139-140, *supra*); and the defective heater cases being among, or governed by the rules pertaining to, the police and fire protection cases (*Motyka, supra,* pp. 137–

138). To phrase it in another way, the defective heater cases, such as the case before us, have been placed by the Court of Appeals in the category of the cases predicated on "the failure to provide adequate fire department protection" (*Motyka*, p. 138); and the Court of Appeals has also said that "The *Runkel* case does not create liability in" cases in that category, i.e., cases "of general failure to supply * * * fire protection" (*Motyka*, p. 140). It follows that an effort by this court to distinguish the case before us from *Motyka* would be an attempt to distinguish cases which the Court of Appeals has found indistinguishable and in the same category; and that we could not apply the *Runkel* rule to the facts before us except by denying effect to the Court of Appeals holding in *Motyka* that *Runkel* is inapposite.

Additionally, recovery in the *Runkel* case seems to have depended largely, if not entirely, on the mandatory provisions of the Administrative Code of the City of New York and of the Multiple Dwelling Law; section 564–17.0 of the code being quoted by the Reporter in *Runkel*, in pertinent part as follows: "It is hereby declared to be the duty, of which there shall be a joint and several liability, of every owner * * * of * * * any * * * building * * * and of every * * * public officer and board having charge of any * * * building or erection therein, to keep, place and preserve the same and every part * * * in such condition, and to conduct the same in such manner that it shall not be dangerous or prejudicial to life or health" (p. 859). Further, appellant's theory excludes any dependence on the breach of a mandatory statutory duty and in his brief he states that, "There was no duty upon the City to act, it acted anyway and did so negligently."

There exist deficiencies in pleading, additional to the basic insufficiency, some of which have been merely touched upon in passing, but, the theory of the action itself being insupportable, it is not necessary to discuss them.

The order should be affirmed.

HERLIHY, REYNOLDS, AULISI and HAMM, JJ., concur.

Order affirmed, without costs.