[No. 44492. En Banc. February 16, 1978.]

JUDITH HALVORSON, *Individually and as Administratrix, Appellant,* v. JOHN B. DAHL, ET AL, *Respondents.*

*Arnold J. Barer,* for appellant.

*John P. Harris, Corporation Counsel,* and *Philip M. King* and *Thomas J. Wetzel, Assistants,* for respondents.

UTTER, J.—Appellant challenges the dismissal of her complaint against respondent City of Seattle. She is the widow of a man who died in a fire in a Seattle hotel in May 1976. Defendants Dahl owned the hotel. Appellant also joined respondent City as a defendant, based on the alleged failure of city officials to enforce the building, housing, and safety codes and the alleged connection between that failure and the fire. After the filing of appellant's complaint, respondent City moved for dismissal under CR 12(b)(6), and the motion was granted. We reverse the trial court and conclude plaintiff's complaint states a claim upon which relief can be granted.

## I. PROCEDURAL ISSUES

Respondent City maintains that only plaintiff–appellant's amended complaint, and no other allegations of fact, can be considered by this court on appeal. Specifically, the City asserts (1) appellant's presentation of additional facts on appeal is improper, and (2) appellant's failure properly to plead the city ordinances upon which appellant relies destroys her claim. Neither assertion is well founded.

■ On a 12(b)(6) motion, a challenge to the legal sufficiency of the plaintiff's allegations must be denied unless no state of facts which plaintiff could prove, consistent with the complaint, would entitle the plaintiff to relief on the claim. *Brown v. MacPherson's, Inc.,* 86 Wn.2d 293, 545 P.2d 13 (1975); *Grimsby v. Samson,* 85 Wn.2d 52, 530 P.2d 291, 77 A.L.R.3d 436 (1975); *Hofto v. Blumer,* 74 Wn.2d 321, 444 P.2d 657 (1968); *Barnum v. State,* 72 Wn.2d 928, 435 P.2d 678 (1967). Therefore, any hypothetical situation conceivably raised by the complaint defeats a 12(b)(6) motion if it is legally sufficient to support plaintiff's claim. As this court has previously stated, there is no reason why the " 'hypothetical' situation should not be that which the complaining

party contends actually exists." *Brown v. MacPherson's, Inc., supra* at 298 n.2. In *Brown,* this court also sanctioned the presentation of "hypothetical" facts which were not part of the formal record; such facts are allowed to form the "conceptual backdrop for the legal determination." *Brown v. MacPherson's, Inc., supra* at 298 n.2. Because the legal standard is whether *any* state of facts supporting a valid claim can be conceived, there can be no prejudice or unfairness to a defendant if a court considers specific allegations of the plaintiff to aid in the evaluation of the legal sufficiency of plaintiff's claim. Thus, we find nothing improper in appellant's additional allegations of fact made initially upon this appeal.

 Respondent, citing CR 9(i), also maintains that the appellant's complaint was fatally insufficient for failure to include the titles and dates of enactment of the ordinances upon which appellant relies. This contention might be valid if made in the context of a summary judgment in which the record contained no adequate reference to a specific statute. It is, however, invalid as applied to a 12(b)(6) motion involving, as it does, proceedings in which submission of evidence in any form is neither expected nor required. The specific ordinances relied upon by appellant may come before the court under the "hypothetical facts" rule. The rules of civil procedure, adopted largely to avoid resolution of lawsuits on technical matters alone, cannot be used here to dispose of this case short of the merits.

## II. The Viability of Appellant's Claim

Appellant asserts that the City is liable for the death of her husband. In support of her legal position, appellant offers specific factual allegations in the form of hypothetical facts. According to these allegations, the City had been aware of the code violations existing in the hotel for at least 6 years prior to the fire. The City had embarked upon programs of enforcement of the building, housing, and safety codes upon several occasions, but had never followed

through to force the owners of the hotel to bring the structure into compliance. As we must on a 12(b)(6) motion, we accept the plaintiff's allegations as true for the purposes of this appeal. *Grimsby v. Samson, supra; Barnum v. State, supra.*

Appellant invites this court to adopt the emerging new rule that building and housing codes in general impose a duty upon municipalities, assertible in tort, adequately to enforce the codes. Several courts have embraced this rule recently. *Adams v. State,* 555 P.2d 235 (Alas. 1976); *State v. Jennings,* 555 P.2d 248 (Alas. 1976); *Coffey v. Milwaukee,* 74 Wis. 2d 526, 247 N.W.2d 132 (1976); *Dutton v. Bognor Regis Urban Dist. Council,* [1972] 1 Q.B. 373. Appellant states a claim for relief even under the traditional rule, however, and we need not decide whether to adopt the new rule.

The traditional rule is that municipal ordinances impose a duty upon municipal officials which is owed to the *public* as a *whole,* so that a duty enforceable in tort is not owed to any particular *individual. Duran v. Tucson,* 20 Ariz. App. 22, 509 P.2d 1059 (1973); *Hoffert v. Owatonna Inn Towne Motel, Inc.,* 293 Minn. 220, 199 N.W.2d 158 (1972); *Stigler v. Chicago,* 48 Ill. 2d 20, 268 N.E.2d 26 (1971). This court embraced the traditional rule prior to the repeal of sovereign immunity. *See, e.g., Goggin v. Seattle,* 48 Wn.2d 894, 297 P.2d 602 (1956). The Court of Appeals as recently as 1976 applied this traditional rule. *Georges v. Tudor,* 16 Wn. App. 407, 556 P.2d 564 (1976).

The traditional rule has an exception, however, which is applicable in this case. Liability can be founded upon a municipal code if that code by its terms evidences a clear intent to identify and protect a particular and circumscribed class of persons. *Stranger v. New York State Elec. & Gas Corp.,* 25 App. Div. 2d 169, 268 N.Y.S.2d 214 (1966); *Motyka v. Amsterdam,* 15 N.Y.2d 134, 256 N.Y.S.2d 595, 204 N.E.2d 635 (1965). The Seattle Housing Code is such a statute, and appellant states a claim under it.

The special nature of the housing code is found in chapter 27.04, in the declaration of purpose.[1] While most codes are enacted merely for purposes of *public* safety or for the *general* welfare,[2] this section identifies conditions and circumstances . . . dangerous and a menace to the health, safety, morals or welfare of *the occupants of such buildings and of the public"* and establishes it as the purpose of the code to provide "effective means for enforcement" of minimum standards. (Italics ours.) The Seattle Housing Code is an ordinance enacted for the benefit of a specifically identified group of persons as well as, and in addition to, the general public.

Appellant alleges that the hotel was not in compliance with that code. However, this fact alone does not support a claim against the City. Appellant must also demonstrate

---

[1]Section 27.04.020 of the Seattle Housing Code states:

"There exist, within the city of Seattle, dwellings and other buildings or portions thereof, occupied or designed for human habitation together with appurtenant structures and premises, which are unfit for human habitation, substandard, deteriorating, in danger of causing or contributing to the creation of slums or otherwise blighted areas, and inimical to the health, safety and welfare of the occupants thereof and of the public.

"Such conditions are the result of, among other circumstances: inadequate original construction; dilapidation; failure to repair; lack of proper sanitary facilities and maintenance; structural or other defects; overcrowding; defects increasing the hazards of fire, accidents, or other calamities; uncleanliness; inadequate heating, lighting and ventilation; lack of knowledge of the general public of their rights, duties and obligations with respect to the occupancy, maintenance and repair of such buildings and inadequate remedies for the enforcement of such rights, duties and obligations; or any combination of such circumstances.

"Such conditions and circumstances are dangerous and a menace to the health, safety, morals or welfare of the occupants of such buildings and of the public, and accordingly it is the purpose of this code to establish minimum standards and effective means for enforcement thereof for the preservation, protection, and promotion of the public health, safety, morals and general welfare."

[2]A typical example of such language is found in the Seattle Building Code, section 3.01.020:

"The purpose of this Code is to provide minimum standards to safeguard life or limb, health, property, and public welfare by regulating and controlling the design, construction, quality of materials, occupancy, location and maintenance of all buildings and structures within the city and certain equipment specifically regulated herein."

culpable neglect regarding, or indifference to, that noncompliance. That requirement is adequately met in this case by appellant's allegations that the City had been aware of the deficiency in the structure for 6 years, and had undertaken to force compliance on several occasions but had never followed through. Because of these allegations, we find it unnecessary to consider whether neglect falling short of actual and long–standing knowledge of noncompliance would support a claim for relief.

We conclude that appellant states a claim upon which relief can be granted under the Seattle Housing Code, and based on the city's long–term knowledge of, and inadequate response to, the inadequacy of the hotel's compliance with that code. This case is reversed and remanded for trial.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.