**FILED**
**JULY 24, 2018**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ALLAN MARGITAN and GINA MARGITAN, husband and wife, | ) ) ) | No. 34606-4-III |
| Appellants, | ) ) | |
| v. | ) ) | |
| SPOKANE REGIONAL HEALTH DISTRICT, a municipal corporation and SPOKANE REGIONAL HEALTH DISTRICT BOARD OF HEALTH, a municipal corporation, MARK HANNA and JENNIFER HANNA, husband and wife, | ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) | |

LAWRENCE-BERREY, C.J. — Allan and Gina Margitan appeal from the trial court's

summary judgment order, which dismissed their claims against Spokane Regional Health

District (SRHD). We affirm.

FACTS

Spokane County Short Plat 1227-00 consists of "Parcels" 1, 2, and 3. Parcel 1 is

to the east of Parcel 2, and Parcel 2 is to the east of Parcel 3. The short plat map shows a

40 foot wide access and utility easement across Parcels 1 and 2 in favor of Parcel 3. A

note on the map requires the applicant to secure public water for each of the three parcels.

In April 2002, the Margitans purchased Parcel 1. In May 2002, the Hannas purchased Parcel 2. One month earlier, Mr. Hanna mistakenly informed the contractor hired to build his house that the easement was 20 feet wide. On May 1, 2002, Mr. Hanna learned that the easement through Parcel 2 was 40 feet wide, not 20 feet wide. Mr. Hanna neglected to inform his contractor of this.

In June 2002, Larry Cook Excavating Inc. applied to SRHD for a permit to build an on-site sewage system on behalf of the Hannas. SRHD issued the permit in January 2003, and Cook Excavating built the septic system. In March 2003, Cook Excavating submitted an "as built" drawing of the septic system. Clerk's Papers (CP) at 82. The "as built" drawing erroneously depicts the easement as 20 feet, and shows an 11 foot separation between the depicted easement and the closest corner of the drain field. Had the actual 40 foot easement been depicted on the drawing, it would show that the closest corner of the drain field extends 9 feet into the easement.

In 2010, the Margitans purchased Parcel 3, including the existing home. The following year, the Margitans began to remodel the home so they could lease it out as a high-end rental.

In 2012, the Hannas filed a quiet title action in Spokane County Superior Court against the Margitans to reduce the 40 foot easement to a 20 foot easement. About one

2

year into that litigation, the Margitans learned that the Hannas' drain field was built 9 feet into their easement. The Margitans notified SRHD of this. The litigation was later amended to a quiet title action that sought to determine the rights of all Parcel 2 easement holders of record.

In July 2013, the Margitans filed a complaint with SRHD. The complaint alleged that the Hannas' drain field was within their 40 foot easement.

The Margitans told Steven Holderby, SRHD's Liquid Waste Program Manager, that they were remodeling the old house on Parcel 3 and they planned on leasing it for income. Mr. Holderby confirmed to the Margitans that if his investigation determined that the Hannas' drain field was in the easement, SRHD would have the drain field relocated promptly.

In October 2013, SRHD and the Hannas entered into an agreement concerning their on-site sewage system. The Margitans were not party to this agreement and neither SRHD nor the Hannas consulted the Margitans about the agreement. The agreement required the Hannas to promptly relocate their drain field after completion of their quiet title litigation. Notwithstanding that requirement, the agreement required the Hannas to immediately take corrective action if it appeared to SRHD that the drain field posed a public health risk.

In early December 2013, SRHD received a letter from the Margitans. In the letter, the Margitans expressed concern that the Hannas' drain field might contaminate their water. Soon after, the Margitans asked Dr. Joel McCullough, the health officer for SRHD, to make an expedited decision concerning the legality of the Hannas' drain field.

In his January 27, 2014 letter decision, Dr. McCullough concluded:

[T]here is insufficient documentation to definitely determine whether or not your water line is within 10 feet of the drain field [as prohibited by WAC 246-272A-0210]. Therefore, it is unknown if there is non-compliance of the [Hannas's drain field] as it relates to the . . . pressurized water line . . . .

CP at 61. Dr. McCullough directed Mr. Hanna to provide documentation to establish the exact location of the water line and its relationship to the drain field. Dr. McCullough also directed the Hannas to propose how they would bring their drain field into compliance if it was within 10 feet of the Margitans' water line.

The Margitans appealed Dr. McCullough's determination to the SRHD Board of Health (Board). After an adjudicatory hearing, the Board found there was insufficient evidence to establish the location of the water line and, for that reason, insufficient evidence that the drain field violated the 10 foot separation requirement. The Board also determined, *if* the drain field was within 10 feet of the water line, the health risk was minimal. Specifically, the Board found that no water contamination could occur unless the water line broke near the drain field. The Board noted that a break in the line would

be obvious to the Margitans because it would cause a noticeable reduction in water pressure.

In the summer of 2014, the Margitans completed their remodel work. They requested a final building inspection so they could obtain a certificate of occupancy. When the building inspector arrived, the Margitans' water was off. Mr. Margitan explained his concern that the proximity of the water line to the drain field might cause the water to be unsafe.

In early September 2014, the building inspector issued a brief report denying the Margitans a certificate of occupancy. The report notes:

> You have notified us of encroachment of a septic drain field into the
> restricted zone of your water supply line which you claim endangers your
> potable water supply. You have also provided us corroboration of the issue
> through copies of SRHD documentation. A Certificate of Occupancy can
> be issued upon receipt of documentation (SRHD and/or water puveyor
> [sic]) accepting the waterline and it's [sic] adequacy for residential use.

CP at 1271.

The Margitans filed suit against SRHD and the Hannas. This appeal concerns only the Margitans' claims against SRHD. Those claims center around SRHD's failure to promptly require the Hannas to relocate their drain field outside the 40 foot easement. The Margitans claimed that SRHD's failure caused the certificate of occupancy not to be issued, leading to their loss of rental income.

5

The parties conducted discovery. The Hannas retained Shawn Rushing to use a tracer wire to locate the water line and determine if it was within 10 feet of the drain field. Mr. Rushing determined that the closest the water line came to the drain field was 14 feet.

SRHD filed a motion for summary judgment requesting that the trial court dismiss the Margitans' claims. During the briefing process, SRHD deposed the building inspector.

> Q. Did [Mr. Margitan] tell you why he was not comfortable with the potability of the water to Parcel 3?
> A. . . . [H]e said he felt that the [water line] was close to a . . . drain field . . . in the easement of Parcel 2.
> And I said, "Well, then, just get something that—from your purveyor that says it's potable. You know, somebody, tell me it's good water. I don't care who it is."
> . . . .
> Q. . . . So if you had gone out there [to re-inspect] and the water is running and the short plat says it's potable, would [it] have been sufficient for you?
> A. Yes, ma'am.

CP at 1521.

The trial court granted SRHD's motion, and the Margitans timely appeal.[1]

_____

[1] After the parties filed their appellate briefs, the Margitans filed a motion asking this court to take judicial notice of the permit that SRHD issued to the Hannas in conjunction with the Hannas relocating their drain field. The permit, issued during the pendency of this appeal, shows that SRHD did not require the Hannas to dig up their former drain field.

No. 34606-4-III
*Margitan v. Spokane Reg'l Health Dist.*

ANALYSIS

The Margitans claim that the trial court erred by granting SRHD's summary judgment motion.

This court reviews summary judgment orders de novo, engaging in the same inquiry as the trial court. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 483, 78 P.3d 1274 (2003). Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). All facts and reasonable inferences are considered in a light most favorable to the nonmoving party. *Berger v. Sonneland*, 144 Wn.2d 91, 102-03, 26 P.3d 257 (2001). When reasonable minds can only reach one conclusion, questions of fact may be determined as a matter of law. *Ruff v. County of King*, 125 Wn.2d 697, 704, 887 P.2d 886 (1995).

The party opposing summary judgment "may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value . . . ." *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d

---

Facts that a court may judicially notice are those "'facts capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy and verifiable certainty." *CLEAN v. State*, 130 Wn.2d 782, 809, 928 P.2d 1054 (1996) (quoting *State ex rel. Humiston v. Meyers*, 61 Wn.2d 772, 779, 380 P.2d 735 (1963)). Because a permit does not qualify under this standard, we deny the Margitans' motion.

7

1, 13, 721 P.2d 1 (1986). Instead, it must put forth evidence showing the existence of a triable issue. *Id*. at 12-13. The evidence must be admissible. CR 56(e) (affidavits "shall set forth such facts as would be admissible in evidence").

"In a summary judgment motion, the moving party bears the initial burden of showing the absence of an issue of material fact." *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

> If the moving party is a defendant and meets this initial showing, then the inquiry shifts to the party with the burden of proof at trial, the plaintiff. If, at this point, the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial", then the trial court should grant the motion.

*Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

A.    UNCONSTITUTIONAL TAKING

The Margitans assert that SRHD violated their property rights by executing the October 2013 agreement with the Hannas. They argue that the agreement allowed the encroachment to continue and was thus an unconstitutional taking.

Article I, section 16 of the Washington Constitution states that "'[n]o private property shall be taken or damaged for public or private use without just compensation

8

having been first made.'" *Woods View II, LLC v. Kitsap County*, 188 Wn. App. 1, 38-39,

352 P.3d 807 (2015) (alteration in original).

> Under existing Washington and federal law, a police power measure can violate article I, section 16 of the Washington State Constitution or the Fifth Amendment to the United States Constitution and thus be subject to a takings challenge when (1) a regulation affects a total taking of all economically viable use of one's property, (2) the regulation has resulted in an actual physical invasion on one's property, (3) a regulation destroys one or more of the fundamental attributes of ownership (the rights to possess, exclude others from, and dispose of property), or (4) the regulations were employed to enhance the value of publicly held property.

*Id*. at 39 (citations omitted). A constitutional taking is a permanent or recurring invasion

of private property. *Miotke v. City of Spokane*, 101 Wn.2d 307, 334, 678 P.2d 803 (1984)

(quoting *N. Pac. Ry. v. Sunnyside Valley Irrig. Dist.*, 85 Wn.2d 920, 924, 540 P.2d 1387

(1975)). In order to constitute a taking, a governmental intrusion must be "'chronic and

unreasonable,'" and not simply a temporary interference that is unlikely to recur.

*Lambier v. City of Kennewick*, 56 Wn. App. 275, 283, 783 P.2d 596 (1989) (quoting

*Orion Corp. v. State*, 109 Wn.2d 621, 671, 747 P.2d 1062 (1987)).

Here, the agreement allows the drain field to exist in the easement only

temporarily. The agreement requires the Hannas to relocate their drain field soon after

No. 34606-4-III
*Margitan v. Spokane Reg'l Health Dist.*

the rights of all easement holders are adjudicated.  The encroachment, therefore, is only

temporary, not permanent.[2]

The Margitans argue that *Miotke* supports their position by recognizing that a

taking may be temporary.  Their argument is supported only by the dissent in *Miotke*.

The dissenting opinion is not binding and is contradicted by a majority of the justices on

the issue.

B.      NEGLIGENCE AND PUBLIC DUTY DOCTRINE

The Margitans next contend the trial court erred by dismissing their claim that

SRHD was negligent in not requiring the Hannas to promptly relocate their drain field

outside the easement.  The Margitans argue that SRHD owed them a duty.  We disagree.

In any negligence action against a governmental entity, the threshold determination

is whether a duty of care was owed to the injured plaintiff individually rather than to the

public in general; this is known as the public duty doctrine.  *Babcock v. Mason County

Fire Dist. No. 6*, 144 Wn.2d 774, 785, 30 P.3d 1261 (2001).  This doctrine is a "focusing

tool" designed to determine whether the governmental entity owed a duty to the general

_____

[2] A constitutional taking does not occur unless the property owner suffers a loss
because of governmental interference with the owner's property.  *See Tapio Inv. Co. I v.
Dep't of Transp.*, 196 Wn. App. 528, 541, 384 P.3d 600 (2016), *review denied*, 187
Wn.2d 1024, 390 P.3d 331 (2017).  We question whether the Margitans have sustained
any loss, given that the drain field is more than 10 feet from the water line.

public or to a particular plaintiff. *Munich v. Skagit Emergency Commc'ns Ctr.*, 175 Wn.2d 871, 878, 288 P.3d 328 (2012).

There are four exceptions to the public duty doctrine that enable a plaintiff to establish that he or she was owed a duty of care by the governmental entity: (1) legislative intent, (2) failure to enforce, (3) rescue, and (4) special relationship. *Id*. at 879. The Margitans assert that three of the four exceptions apply.

### 1. Exception 1: legislative intent

The legislative intent exception applies where legislation or regulation, by its terms, evidences a clear intent to identify and protect a particular class of persons rather than the general public. *1515-1519 Lakeview Boulevard Condo. Ass'n v. Apt. Sales Corp.*, 102 Wn. App. 599, 607-08, 9 P.3d 879 (2000), *rev'd in part and remanded*, 146 Wn.2d 194, 43 P.3d 1233 (2002). The legislation or regulation must clearly express the intent to identify and protect a particular class of persons; it may not be implied. *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 930, 969 P.2d 75 (1998). Where the purpose of a statute or regulation is to protect the health, safety, and welfare of the general public, and not a particular person or class, the exception is not applicable. *Id*.

11

RCW 43.20.050 is the statutory authority for WAC 246-272A-0210. The statute

expressly states the purpose of adopting water system rules is to "protect public health."

RCW 43.20.050(2). Similarly, the rules identify the purpose for chapter 246-272A WAC:

> (1) The purpose of this chapter is to protect the public health by minimizing:
> (a) The potential for public exposure to sewage from on-site sewage systems; and
> (b) Adverse effects to public health that discharges from on-site sewage systems may have on ground and surface waters.

WAC 246-272A-0001. The Margitans do not point us to any language in the statutes or

regulations that contain an express intent to protect a particular class of persons.

The Margitans rely on two cases to support their argument that the legislative

intent exception applies. The first case is *Halvorson v. Dahl*, 89 Wn.2d 673, 574 P.2d

1190 (1978). There, the plaintiff, an occupant of a building, was injured because the city

of Seattle was negligent in not enforcing its housing code. *Id*. at 675. The *Halvorson*

court analyzed the housing code's declaration of purpose and found express language

evidencing a legislative intent to protect a particular class of persons. *Id*. at 676-77. The

declaration of purpose provided: "'Such conditions and circumstances are dangerous and

a menace to the health, safety, morals or welfare of *the occupants of such buildings* and of

the public . . . ." *Id*. at 677 n.1 (emphasis added) (quoting *Seattle Housing Code*

12

§ 27.04.020). No such express language appears in the enabling statute or the regulations at issue in this case.

The Margitans also cite *Campbell v. City of Bellevue*, 85 Wn.2d 1, 530 P.2d 234 (1975). There, a person was electrocuted because the city of Bellevue's electrical inspector failed to sever faulty electrical equipment from the power source. *Id*. at 3-6. Bellevue Municipal Code § 16.32.090 in effect at the time stated:

> "*In order to safeguard persons and property from the danger incident to unsafe or improperly installed electrical equipment*, the building official shall immediately sever any unlawfully made connection of electrical equipment to the electrical current if he finds that such severing is essential to the maintenance of safety and the elimination of hazards."

*Id*. at 5 (emphasis added). The *Campbell* court held that the city was liable because its ordinance explicitly safeguarded people from the danger of unsafe electrical equipment and required the inspector to sever the dangerous electrical connection. *Id*. at 13. *Campbell* is distinguishable because there is nothing in the enabling statute or regulations at issue in this case that explicitly safeguards people from the possibility of contaminated water.

### 2. Exception 2: failure to enforce

This exception applies when all four elements are shown where: (1) governmental agents are responsible for enforcing statutory requirements, (2) governmental agents

possess actual knowledge of a statutory violation, (3) governmental agents fail to take corrective action despite a statutory duty to do so, and (4) the plaintiff is within the class the statute intended to protect. *Bailey v. Town of Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987); *Woods View II*, 188 Wn. App. at 26. This exception is construed narrowly to avoid dissuading governmental officials from carrying out public duties. *Woods View II*, 188 Wn. App. at 26-27.

Here, the Margitans complain that SRHD failed to enforce WAC 246-272A-0210's five foot separation requirement between a drain field and an easement. We disagree. SRHD enforced the separation requirement by requiring the Hannas to relocate their drain field immediately if it appeared to SRHD that there was a public health risk, or, if no such risk appeared to SRHD, after the Hannas completed their quiet title litigation. The Margitans fail to point to any statute, regulation, or decisional authority that required SRHD to take immediate enforcement action absent a public health risk.

### 3. *Exception 4: special relationship*

"A special relationship arises where (1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) gives rise

14

to justifiable reliance on the part of the plaintiff." *Taylor v. Stevens County*, 111 Wn.2d 159, 166, 759 P.2d 447 (1988).

Here, Mr. Holderby assured the Margitans that if the Hannas' drain field was within the easement, SRHD would promptly require the Hannas to relocate their drain field. However, the Margitans did not rely on this assurance. The record is undisputed that the Margitans purchased Parcel 3 and began remodeling the old house long before Mr. Holderby gave the Margitans any assurances.

C.     INTENTIONAL FAILURE TO ENFORCE WAC 246-272A-0210

The Margitans claim the trial court erred by determining there is no cause of action for intentional failure to enforce chapter 246-272A WAC.

They first contend that RCW 4.96.010 creates a cause of action. We disagree. The purpose of RCW 4.96.010 is to abolish sovereign immunity. *Meaney v. Dodd*, 111 Wn.2d 174, 178, 759 P.2d 455 (1988). By adopting RCW 4.96.010, the legislature declared that municipal corporations "shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their . . . officers . . . to the same extent as if they were a private person or corporation." RCW 4.96.010 does not create any new causes of action, imposes no new duties, and brings into being no new liability; it merely removes the defense of

15

sovereign immunity. *Garnett v. City of Bellevue*, 59 Wn. App. 281, 285, 796 P.2d 782 (1990). This statute does not support the Margitans' claim of a cause of action here.

But even if such a cause of action existed, SRHD did enforce the separation requirements of WAC 246-272A-0210. SRHD took corrective action, including obtaining a commitment from the Hannas that they would immediately relocate their drain field if it appeared to SRHD that the drain field posed a public health risk.

D.     INTENTIONAL INTERFERENCE WITH BUSINESS EXPECTANCY

The Margitans next contend the trial court erred by dismissing their claim for intentional interference with business expectancy. We disagree.

"Washington has adopted the tort of interference with a business or economic expectancy, which consists of five elements: (1) existence of a valid contractual relationship or business expectancy, (2) defendants had knowledge of that relationship, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, (4) defendants interfered for an improper purpose or used improper means, and (5) resultant damage." *In re Estate of Lowe*, 191 Wn. App. 216, 237, 361 P.3d 789 (2015) (internal quotation marks omitted).

The parties present argument on several elements, but we focus only on whether SRHD interfered for an improper purpose or used improper means. In their briefing, the

16

Margitans do not argue that SRHD acted for an improper purpose. They instead focus on improper means, contending that the agreement with the Hannas was an improper means because SRHD should have ordered the Hannas to immediately remove the noncomplying system. We disagree.

"[A] plaintiff in Washington may establish an improper means by . . . establishing a set of facts that raises an inference that the defendant was motivated by considerations outside the scope of the party's obligations, such as greed, retaliation, ill will, a desire to gain favor with others, [or] failing to act fairly and reasonably in its dealings with the plaintiff, or acting arbitrarily and capriciously." 16A DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE: § 23:7 Prospective Advantage—Overview at 256 (4th ed. 2013).

The Margitans contend that SRHD's agreement with the Hannas was an improper means of bringing the Hannas' drain field into compliance with WAC 246-272A-0210. We disagree. At the time when SRHD entered into the agreement with the Hannas, the Margitans had not alerted SRHD that their water line might be within 10 feet of the drain field. But even so, the agreement required the Hannas to immediately take corrective action if it appeared to SRHD that the drain field posed a public health risk. The

17

No. 34606-4-III
*Margitan v. Spokane Reg'l Health Dist.*

Margitans have presented no evidence that SRHD was motivated by considerations outside of its obligations or failed to act fairly and reasonably.

E.    SRHD'S REQUEST FOR ATTORNEY FEES

SRHD argues that it is entitled to reasonable attorney fees and costs pursuant to RCW 4.84.370. That statute authorizes an award of reasonable attorney fees and costs if a party substantially prevails in a land use decision made by a county, city, or town, and is the prevailing party before such agency and in all judicial proceedings.

RCW 4.84.370 does not apply to this action. The decision on appeal was not made by a county, city, or town. Nor did the Margitans appeal from a land use decision. Rather, the Margitans appealed from a summary dismissal of their negligence and intentional tort claims.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.

Pennell, J.

18