IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KARY L. CALDWELL,<br><br>              Appellant,<br><br>        v.<br><br>GRAYS HARBOR COUNTY, a<br>governmental entity; JENNIFER M.<br>SMITH and JOHN DOE SMITH,<br>individually and the martial community<br>composed thereof; SHAWN M. SMITH<br>and JOHN DOE SMITH, individually<br>and the marital community composed<br>thereof; JAMES THOMPSON and<br>JANE DOE THOMPSON, individually<br>and the marital community composed<br>thereof,<br><br>              Defendants,<br><br>    and<br><br>CITY OF HOQUIAM,<br><br>              Respondent. | No. 78159-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>FILED: October 22, 2018 |

BECKER, J. — Appellant Kary Caldwell was attacked by a dog that had been declared dangerous by the City of Hoquiam. She brought suit against Hoquiam. This dispute was previously before this court in Caldwell v. City of Hoquiam, 194 Wn. App. 209, 373 P.3d 271, review denied, 186 Wn.2d 1015 (2016). In this appeal, Caldwell argues that Hoquiam's duties under its animal control ordinance were owed to her under the legislative intent exception to the

public duty doctrine. We need not decide whether the legislative intent exception applies, because even if it does, the ordinance does not create a duty to act before the dangerous dog declaration becomes final.

## FACTS

Shawn Smith owned a large dog named Temper. On August 11, 2009, the City of Hoquiam's animal control officer, Robert Hill, responded to a call that Temper was viciously attacking another dog. Because this was not Temper's first incident of attacking another dog, Hill informed Smith that Temper would be declared a dangerous dog under Hoquiam's dangerous dog ordinance, Hoquiam Municipal Code (HMC) 3.40.080. Hill served Smith with a dangerous dog declaration. He left without impounding Temper.

Once a dog has been declared dangerous, the owner is subject to five requirements under HMC 3.40.080. These include maintaining a proper enclosure for the dog, posting visible warning signs, obtaining a dangerous dog license from the city, muzzling the dog whenever it is outside its enclosure, and maintaining an insurance policy in the amount of $250,000. HMC 3.40.080(5).

Smith timely appealed the dangerous dog declaration to the Hoquiam Municipal Court. See HMC 3.40.080(4). On September 1, 2009, the municipal court affirmed the declaration that Temper was a dangerous dog and ordered Smith to comply with the dangerous dog requirements within 10 days. According to Officer Hill, Smith had until 5:00 p.m. on Friday, September 11, to comply.

The record indicates that Smith moved out of Hoquiam on or before September 10. Officer Hill visited Smith's residence on September 14, 2009, his

next working day after the expiration of the grace period. No one answered the door. Hill left a notice. Two days later, Hill returned. Smith's landlord told Hill that Smith had moved out and taken Temper with her.

Hill asked the landlord to tell Smith to contact him. Hill notified neighboring Grays Harbor Animal Control and Aberdeen Animal Control, as an advisory, that Smith was in violation of Hoquiam's dangerous dog ordinance. According to Hill, he took no further action because he lacked "jurisdiction or investigative powers to go outside the city limits."

On September 26, 2009, Kary Caldwell visited James Thompson at his apartment in Kent. Thompson lived with Smith's daughter and was taking care of Temper. Temper attacked Caldwell, fracturing her arm in 10 places.

Caldwell brought suit against Hoquiam, alleging that the city had a duty to impound Temper immediately upon declaring it a dangerous dog. The trial court granted partial summary judgment in favor of Caldwell solely on the question of whether Hoquiam owed Caldwell a duty. The court held that Hoquiam owed Caldwell a duty to impound Temper immediately on August 11 when Hill served Smith with the dangerous dog declaration. A jury found that Hoquiam breached that duty and awarded Caldwell $435,000.

Hoquiam appealed. This court reversed. We concluded there is no duty under the Hoquiam ordinance to enforce a dangerous dog declaration upon service by immediately impounding the dog. Caldwell, 194 Wn. App. at 221.

On remand, Caldwell moved for summary judgment on the alternative theory that "the City of Hoquiam Municipal Code demonstrates a clear legislative

intent to identify, protect and compensate human beings who come into contact with dangerous dogs, including the plaintiff Kary Caldwell." The trial court denied Caldwell's motion.

Caldwell appealed the denial directly to the Washington Supreme Court under RAP 4.2. The court concluded that there were no remaining legal claims to be decided and then transferred the appeal to this court.

ANALYSIS

In Washington, government entities are liable for their tortious conduct to the same extent as a private person or corporation. RCW 4.92.090; RCW 4.96.010; Washburn v. City of Federal Way, 178 Wn.2d 732, 753, 310 P.3d 1275 (2013). Consequently, a plaintiff claiming that a municipality has acted negligently may recover after proving the existence of a duty, a breach thereof, a resulting injury, and proximate causation between the breach and the resulting injury. Washburn, 178 Wn.2d at 753.

The question in this appeal is whether Caldwell established that Hoquiam owed her a duty. Whether a duty exists is a question of law which this court reviews de novo. Caldwell, 194 Wn. App. at 214.

Unlike private persons, governments are tasked with duties that are not legal duties within the meaning of tort law, such as governing, passing laws, or holding elections. Washburn, 178 Wn.2d at 753. For this reason, when the defendant in a negligence action is a governmental entity, "a plaintiff must show the duty breached was owed to him or her in particular, and was not the breach of an obligation owed to the public in general, i.e., a duty owed to all is a duty

owed to none." Munich v. Skagit Emergency Commc'n Ctr., 175 Wn.2d 871, 878, 288 P.3d 328 (2012). This is known as the public duty doctrine.

There are several exceptions to the public duty doctrine. Bailey v. Town of Forks, 108 Wn.2d 262, 268, 737 P.2d 1257, 753 P.2d 523 (1987). Though they are referred to as exceptions, they are simply shorthand for ways in which a governmental entity may owe a duty to the plaintiff. Washburn, 178 Wn.2d at 753.

Caldwell argues that Hoquiam owed her a duty under the legislative intent exception. The legislative intent exception to the public duty doctrine "allows a plaintiff to claim that a governmental entity owes him or her a legal duty where a legislative enactment 'evidences a clear legislative intent to identify and protect a particular and circumscribed class of persons.'" Washburn, 178 Wn.2d at 754, quoting Honcoop v. State, 111 Wn.2d 182, 188, 759 P.2d 1188 (1988).

Washington first recognized the legislative intent exception in Halvorson v. Dahl, 89 Wn.2d 673, 676, 574 P.2d 1190 (1978). The plaintiff, the widow of a man who died in a Seattle hotel fire, was allowed to proceed against the city on the theory that a declaration of purpose in the city housing code gave rise to a particular duty owed to residents of the dilapidated hotels. Halvorson, 89 Wn.2d at 677. While most codes are enacted merely for purposes of public safety or for the general welfare, the Seattle housing code was "an ordinance enacted for the benefit of a specifically identified group of persons as well as, and in addition to, the general public." Halvorson, 89 Wn.2d at 677.

The Washington Supreme Court revisited the legislative intent exception in Washburn, 178 Wn.2d at 754. Under RCW 10.14.010 police officers have a duty to serve antiharassment orders. Washburn, 178 Wn.2d at 755-56. The plaintiffs in Washburn alleged that an officer's negligent service of an antiharassment order resulted in a woman's death at the hands of her abusive boyfriend. Washburn, 178 Wn.2d at 738-40. The court found that the legislature's declaration of purpose established an intent to protect a particular class of persons suffering harassment at the hands of others, satisfying the requirements of the legislative intent exception. Washburn, 178 Wn.2d at 755-56. The court held that under the legislative intent exception, "if the City's discharge of this duty to act, service of the order, constituted 'culpable neglect,' [the City] bears liability in tort." Washburn, 178 Wn.2d at 757, quoting Halvorson, 89 Wn.2d at 678.

Citing Washburn, Caldwell contends that HMC 3.40.080 manifests a clear legislative intent to protect her. She argues Hoquiam owes a duty to her as an individual under the ordinance and Hoquiam was required to exercise reasonable care when carrying out the duties created by the ordinance. But she fails to identify a duty created by the ordinance that Hoquiam failed to carry out.

Before addressing whether a government entity owed a duty created by statute or ordinance to the public as a whole or to a particular individual, the alleged duty must first be identified, i.e., what did the statute or ordinance require the government entity to do? The legislative intent exception, along with the other exceptions to the public duty doctrine, are merely focusing tools for

determining whether an *existing* duty is owed solely to the public or if it is also owed to an individual. Washburn, 178 Wn.2d at 753. The exceptions do not create a duty to act independent of an underlying statutory or common law duty. For instance, in Halvorson and Washburn, the duties to act were rooted, respectively, in the failure to enforce the building code and negligence in carrying out the statutory obligation to serve an antiharassment order. Halvorson, 89 Wn.2d at 677; Washburn, 178 Wn.2d at 756. The existence of a duty must be established before we can determine whether that duty was owed to a particular plaintiff.

In the first appeal, this court determined that Hoquiam owed no duty under state or common law. Caldwell, 194 Wn. App. at 222-23. Therefore, Caldwell must establish that Hoquiam owed her a duty under the municipal code. Caldwell, 194 Wn. App. at 223.

Caldwell contends Hoquiam's duty was to ensure that Smith was complying with the five requirements of HMC 3.40.080(5), such as obtaining insurance and building a fenced enclosure for Temper. She argues that this duty arose at some point between when Officer Hill served the declaration on August 11 and when Smith timely appealed several days later.

The ordinance states that a dangerous dog declaration is final upon service *unless* timely appealed:

> A declaration that a dog is dangerous shall be final unless appealed by the owner or person in control of the dog within ten days of service.

7

HMC 3.40.080(4). From this sentence, Caldwell reasons that the declaration was effectively final when served and could be immediately enforced until Smith filed her appeal. This court rejected this argument in the first appeal.

> HMC 3.40.080(4) provides that "[a] declaration that a dog is dangerous shall be final *unless* appealed by the owner or person in control of the dog within ten days of service." Thus, a fair reading of this provision is that the declaration cannot be final during the 10 days following service. To read this provision otherwise requires that we conclude that the declaration becomes "final" for the 10 day period following service and prior to a possible appeal. This we decline to do.

Caldwell, 194 Wn. App. at 220.

This court's conclusion that the declaration was not final remains the law of this case. "In its most common form, the law of the case doctrine stands for the proposition that once there is an appellate holding enunciating a principle of law, that holding will be followed in subsequent stages of the same litigation." Roberson v. Perez, 156 Wn.2d 33, 41, 123 P.3d 844 (2005). "'It is also the rule that questions determined on appeal, or which might have been determined had they been presented, will not again be considered on a subsequent appeal if there is no substantial change in the evidence at a second determination of the cause.'" Folsom v. County of Spokane, 111 Wn.2d 256, 263, 759 P.2d 1196 (1988), quoting Adamson v. Traylor, 66 Wn.2d 338, 339, 402 P.2d 499 (1965). The application of the doctrine is discretionary under RAP 2.5(c)(2). We see no reason to depart from this court's reasoning in the first appeal.

Accordingly, Caldwell's argument about the legislative intent exception is foreclosed by this court's decision in the first appeal. Absent a final declaration, Smith was not required to comply with HMC 3.40.080(5), and Hoquiam had no

duty to enforce the ordinance. Because Hoquiam did not have a duty to enforce the ordinance under the facts of this case, we do not reach the question whether the obligations created by the ordinance are owed to Caldwell as an individual under the legislative intent exception. The trial court properly denied Caldwell's motion for summary judgment.

Affirmed.

Becker, J.

WE CONCUR: